(76 App. Div. 34.)

### WINGERT v. KRAKAUER et al.

(Supreme Court, Appellate Division, First Department. November 14, 1902.)

1. MASTER AND SERVANT—INJURIES—LABOR LAW—SCAFFOLDING.

The labor law (Laws 1897, c. 415, § 18) provides that a person employing another to perform labor of any kind in the "erection, repairing, altering or painting of a house, building or structure," shall not erect any scaffolding not so constructed as to protect life and limb. *Held*, that under the terms of the section, and the legislative intent as indicated by a course of legislation (Laws 1885, c. 314; Laws 1891, c. 214; Laws 1892, c. 517), a scaffolding erected in a room in a factory in order to attach machinery to the ceiling was within the statute.

2. SAME—ASSUMPTION OF RISK.

Under the statute, when a servant is injured owing to defective scaffolding erected by the master, the master is liable, even though the servant participated in the construction, unless the servant knew of the defect, or by exercise of reasonable care might have known of it.

3. SAME—EVIDENCE.

Where in an action for injuries to a servant owing to the breaking of a scaffold, in the construction of which plaintiff had assisted, it appearing that the boards furnished for the scaffold were painted on one side

and discolored with dirt on the other, the jury would be authorized to find that plaintiff had not assumed the risk.

Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Edwin Wingert against David Krakauer and another. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Henry Escher, Jr., for appellant.
Charles C. Nadal, for respondents.

HATCH, J. The plaintiff brings this action to recover damages alleged to have been sustained by him through the negligence of the defendants in failing to erect a safe and suitable scaffold for use in and about the alteration of its factory building. Defendants are piano manufacturers, and, at the time of the accident resulting in the injuries of which complaint is made, were engaged in the removal of their plant and business from a building in 126th street to a building in 132d street, where the injury was sustained. Plaintiff was one of the employés of the defendants; had been employed as a porter, and upon a planer used in defendants' factory, and, in connection with such employment, had become familiar with different kinds of wood, but had little, if any, knowledge upon the strain-bearing capacity of wood used for supporting scaffolding and other structures. While the removal of the defendants' business was in progress, the plaintiff and another employé of the defendants were sent to the new factory, with directions to erect a scaffold for the purpose of placing therein supports for some heavy shafting and pulleys, and the shafting necessary for use in and about the business to be carried on. The plaintiff and his fellow workman proceeded to comply with the directions given by the defendants, and erected a scaffold in a designated room in the factory building, from 12 to 13 feet in height. The method adopted in its construction was the erection of five pairs of upright pieces, 4 by 4, running from the floor to the rafters overhead, and secured at both ends. These uprights were from 4 to 5 feet apart, and consisted of new wood. The distance between the sets of uprights does not clearly appear. From front to rear, crosspieces were nailed upon each pair of uprights, and cleats were nailed thereunder for the purposes of support, and the crosspieces were also nailed to the uprights. So far as appears, the cleating and nailing were their only supports. These crosspieces were boards $\frac{7}{8}$ of an inch in thickness, and $4\frac{1}{2}$ inches in width. They were obtained from a quantity of old and refuse lumber which the defendants had purchased and placed in the new factory. Much of this stuff was painted upon one side, and discolored and dirty on the other. Upon the painted side, defects in the material could not be discovered. Whether it could be discovered through the dirt and discoloration upon the other side, before use was made of it, does not clearly appear. The plaintiff testified that he examined this lumber before using it; that it

looked sound and good, and he saw no knots in it. For a platform, two thicknesses of boards were laid on the top of the crosspieces, covering the entire width between the uprights. The plaintiff had never built or aided in building a scaffolding before this time, and was unfamiliar with the method necessary to secure a safe structure. In the process of preparing the room for the defendants' business, it became necessary to place boards, firmly attached to the ceiling, and upon these boards iron hangers were placed, consisting of a hook-shaped contrivance, into which was placed boxes, upon and through which the shafting was to run. After the scaffolding was erected, it was used for the purpose of attaching these hangers to the ceiling. After this was accomplished, it became necessary to place in position the shafting and pulleys, weighing about 971 pounds. For this purpose six men were ordered to get upon the platform of the scaffold by the defendants' foreman, and raise the same into position. The weight of these men ran from 150 to 200 pounds each. Before the men got upon the scaffold, plaintiff asked the foreman if it was safe, and he replied, in substance, that the scaffolding was sufficiently strong for the purpose for which it was to be used. As the men started to raise the shafting, it caused a jar, and two crosspieces, at about the center of the scaffolding, broke and fell to the floor, and the shafting came down upon plaintiff's foot, and inflicted injuries which made it necessary to subsequently amputate the limb about four inches below the knee. After the accident it was discovered that one of the crosspieces had a knot in it at the point of the break, extending through the wood. This board was painted upon one side, and was dirty and discolored upon the other. The nails which held the two crosspieces which broke remained in the uprights, but were pulled through the broken crosspieces at the ends. It does not appear that there was any defect in the other crosspiece which broke. Evidence was given tending to show that no braces were attached to the scaffolding, except at the ends, upon the uprights. There was no bracing or other support to the crosspieces, except as above stated. Upon the trial a model was used, but it did not accompany the record upon this appeal. It appears from the evidence that this model was supplied with braces supporting the crosspieces, and a fair inference arose from all of the testimony given upon that subject that proper construction required that the crosspieces should have been supported by braces running to the floor.

It was the contention of the plaintiff upon the trial that section 18 of the labor law (chapter 415, Laws 1897) covered the case, and that the rule therein laid down measured the duty and obligation of the defendants in the premises. The defendants contended that the labor law had no application, for the reason that the prosecution of the work did not involve the erection, repairing, or altering of a house, building, or structure, and therefore that the scaffold was not brought within the terms of the statute. At the close of the plaintiff's case, the defendants moved for a dismissal of the complaint upon the ground that there was no evidence showing negligence upon the part of the defendants, or evidence of the absence of contributory negligence on the part of the plaintiff; that as it appeared that the plaintiff and

another fellow workman constructed the scaffolding, and knew precisely how it was built, the plaintiff thereby assumed the risk of any defect in the structure; that, as the defendants had furnished abundant material with which to properly construct the scaffolding, they discharged in full measure the duty which they owed to the plaintiff. The court granted the motion, and dismissed the complaint upon the ground that the labor law had no application to the case, and therefore that the plaintiff was either guilty of negligence in the construction of the scaffolding, or assumed the risk of its sufficiency, and that in any event the defendants were guilty of no negligence or breach of obligation which they owed the plaintiff. It is quite evident that, if the labor law was not to be applied to the facts of this case, it would fall within the principle laid down in Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017, and the determination of the trial court should therefore be sustained. If the labor law is to be applied, then it follows that the determination of the trial court must be reversed, for by its provisions a duty is enjoined upon the defendant to furnish a safe and suitable structure. Such duty he may not delegate to another, and may not shelter himself from responsibility, if in fact the structure be unsuitable and unsafe, unless such condition be known to the person complaining of an injury therefrom, in which case such person may be held to have assumed the risk. Such risk, however, will not be assumed, as matter of law, unless there be the same knowledge which the law charges upon the master. Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662; Id., 34 App. Div. 515, 54 N. Y. Supp. 615; McLaughlin v. Eidlitz, 50 App. Div. 518, 64 N. Y. Supp. 193.

The main question presented by this appeal, therefore, is, did the changes which were being prosecuted in the defendants' factory constitute the same an alteration, within the meaning of the labor law? In order to arrive at a correct solution of this question, and to determine the intent of the legislature in respect thereto, it is pertinent and proper to examine the language of the several statutes bearing upon the subject, and the evil which the legislature sought to correct, and the statutory rule which it intended to establish. People v. Butler, 147 N. Y. 164, 41 N. E. 416. The first act upon this subject was chapter 314 of the Laws of 1885. It is entitled "An act for the protection of life and limb," and by its provisions it imposed a liability upon a person employing or directing another to do or perform any labor "in the erection, repairing, altering or painting of any house, building or other structure * * * who shall knowingly or negligently furnish or erect, or cause to be furnished for erection, for or in the performance of said labor, such unsuitable or improper scaffolding, hoists, stays, ladders, or other mechanical contrivances as will not give proper protection to the life and limb of any person so employed or engaged." An offense against this statute was made a misdemeanor. This act was amended by chapter 214 of the Laws of 1891, and recites the title of the former act. It re-enacts the provisions of the former statute, and makes further provision for the support and protection of scaffolding or staging swung or suspended more than 20 feet above the ground.

In 1892 (chapter 517 of the Laws of that year), provision was made for the examination of scaffolding, ropes, blocks, pulleys, and tackle used in the construction, altering, painting, or repairing of any building, by the commissioners or superintendent of police, or other person in charge of the force, upon complaint being made that the structure or contrivance in use was dangerous to the life and limb of any person; and the inspector authorized to be appointed was required to cause it to be altered in such manner as to render it no longer dangerous to life or limb. The removal and alteration of scaffolding and other appliances were subject to a like inspection and duty. The labor law (chapter 415, Laws 1897) repealed these acts, except section 5 of chapter 517, Laws 1892. Section 18 of the last-named act substantially re-enacts the provisions of section 1 of chapter 314 of the Laws of 1885, but it omits therefrom the words "knowingly or negligently," and imposes in place thereof the absolute duty of making the structure safe and suitable, and continues the enactment that such construction shall be so made in order "to give proper protection to the life and limb of a person so employed or engaged." In other sections of the labor law the substantial provisions of the statutes to which we have called attention are revised and re-enacted. It seems to be evident from the language of all this legislation that its primary purpose was to protect the life and limb of persons who should be employed upon scaffolding, and in the enumeration of the appliances and contrivances which the master is under an absolute duty to make safe are found hoists, stays, ladders, or other mechanical contrivances. As it is common knowledge that such structures and appliances are usually used in and about the erection, repairing, and alteration of buildings, the language of the statute is made correspondingly broad and general in its terms, so as to embrace every case where the person is called upon "to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure." In terms, the statute protects the workmen in the use of a scaffolding for the alteration of any structure. It does not assume to define what the structure shall be, or in what the alteration shall consist. If it be a structure, and if it be an alteration of such a character as requires the erection of a scaffolding to make it, it would seem to come not only within the spirit, but literally within the terms, of the act. It is as essential to protect the life and limb of a person in making use of a scaffolding necessary to effect an alteration in a room, as it is to protect the same person in the use of a scaffolding in the erection or repairing of a house or structure, where there exists necessity for the use of scaffolding. The life and limb of a person are rendered as insecure in the one case as in the other, and it is this insecurity in the use of the structure which the statute designed to protect, rather than in the character of the work which was being prosecuted in order to effect the alteration. The circumstances of this case furnish a strong illustration of the dangers to be encountered in making use of such a structure, and the purpose of the act is to minimize those dangers, when the alteration requires the use of the scaffold. We are not without direct authority upon this

proposition. In Chaffee v. Dry Dock Co., 68 App. Div. 578, 73 N. Y. Supp. 908, it was held that a ship in the course of construction in a dry dock was a structure, within the meaning of the labor law. It was there said:

"The injury of workmen falling by reason of defective scaffolds was a thing to be avoided. It was an entirely immaterial circumstance, before this general purpose, whether the scaffold should happen to be around a house, a barn, a vessel, or a flag pole. * * * It was against that injury that the legislature sought to guard by imposing additional responsibilities upon the employer in favor of the employé."

It is certainly no greater stretch of construction to hold that placing machinery within a room in a building, and attaching the same firmly to the ceiling, constitutes an alteration of such room, than to hold that a ship upon the stays is a structure, within the meaning of the statute. In each case the prosecution of the work required the erection and use of the scaffold, and the purpose was to protect the workmen in using the same. The language of the statute, however, does not need construction. "Alteration" signifies to change, modify, transform. It is not possible to say that when this room, bare as it stood, had appliances firmly fastened to its ceiling for the purpose of supporting heavy shafting, it was not altered. It was being transformed from a bare room into a place for the manufacture of pianos; and it was, in a literal sense, altered to meet the requirements of the business expected to be carried on. It is no answer to say that the driving of a nail or the hanging of a picture in a room constitutes an alteration. While it does and may alter the appearance of the room, it is not necessarily, for that reason, brought within the terms or fair purview of the statute. This may be conceded. But where the alteration is of such a character as requires the use of scaffolding to effect it, then such case is fairly brought within the terms of the statute, as it constitutes the use of a structure in the alteration for which the act provides; and the necessity immediately arises for the protection of life and limb, which is the primary purpose to be accomplished. We think, therefore, that the labor law applies to this case, and that the alteration brings it fairly within the terms of the statute,—certainly within a liberal interpretation, which the courts are bound to apply in construing it. If these views are sound, it necessarily follows that the court erred in dismissing the complaint.

We also think that error was committed in excluding the testimony of the expert Begley. His knowledge was shown to be sufficient to permit of his testifying as an expert upon the strength of the wood, and the correct method of the construction of scaffolds. It is evident that a question may arise upon a new trial as to the negligence of the plaintiff, and also as to his assumption of risk in the use of the structure. If he used the crosspiece with knowledge of the existing defect therein, or by the exercise of reasonable care might have discovered its infirmity when he made use of it, and such defective piece caused the scaffold to fall, he would be guilty of negligence which would defeat a recovery. Upon this subject, however, there is testimony from which the jury would be authorized to

find that an inspection of the piece used, in the exercise of reasonable care, would not disclose the defect; and, if so, the plaintiff would be exonerated from contributory negligence. The jury might also be authorized to find that the insufficient bracing of the scaffolding caused it to fall, in which event the plaintiff would be excused. Nor can he be charged with assumption of risk unless at the time of making use of the same he knew it to be unsafe, unsuitable, or improper, or was reasonably chargeable with such notice. McLaughlin v. Eidlitz, supra. Upon this subject the jury would be authorized to find that he was not sufficiently informed to be able to determine whether the structure was safe for the purpose for which it was to be used, and thus exonerate him from assumption of risk. There cannot be an assumption of risk unless the plaintiff had knowledge of the defect, or ought, in the exercise of reasonable care, to have known it; and if he were ignorant concerning the security of the structure, even though he participated in building it, he would not be chargeable as matter of law.

It follows that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

PATTERSON, and LAUGHLIN, JJ., concur.

INGRAHAM, J. I am unable to concur in the reversal of this judgment. The plaintiff testified that he had been in the employ of the defendants, who had been piano manufacturers for seven years at the time of the accident, as porter, and in operating joining and planing machines; that the defendants were at the time of the accident moving their factory from 126th street to 132d street, and the plaintiff, with other workmen, was engaged in moving machinery from the old to the new factory for a week or more before the accident. Saturday, before the accident, Pickett, the defendants' foreman, told the plaintiff to go to the new factory and help the machinists at this work. On that morning, when he got to the new factory, he found the machinists and one Tempe there. Tempe had worked a saw at the old factory, and was employed by Foreman Pickett; but, so far as appears, he was not a foreman, nor one employed by the defendant to control the work, but was a fellow employé of the plaintiff. The plaintiff testified that Tempe told him (plaintiff) to build a scaffold to set up the machinery that had been moved to the new factory; that the plaintiff and Tempe commenced to build the scaffold on Saturday, and finished it on Monday, about 2 o'clock. What is here called a "scaffold" seems to have been a platform built with timbers nailed to the floor and ceiling. After these uprights had been placed, crosspieces were nailed on; plaintiff and Tempe selecting the lumber from certain lumber on the premises, which had been used before. The plaintiff testified that they commenced to construct this scaffold; he said to Pickett that they would need lumber to build the scaffold; and that Pickett told him he could use the wood that was on the premises. Neither Tempe nor the plaintiff had any instructions from the defendants or the foreman as to how they should erect this scaffold, or what partic-

ular lumber they should use; but after it was built, and before plaintiff used the scaffold, he asked Pickett whether he thought the scaffold was strong enough, to which Pickett replied, "Yes; the scaffold is strong enough." At that time two machinists, Tempe, and another workman were upon the scaffold. The plaintiff then went upon the scaffold, and lifted up the shafting to adjust the pulleys. After the shafting had been lifted, and when they were about inserting one of the pulleys, the scaffold collapsed, and the plaintiff fell, sustaining injuries for which he seeks to recover in this action. During the time that the plaintiff had been with the defendants, he was a woodworker, and was familiar with different kinds of wood. The plaintiff also testified that, prior to the erection of the scaffold which collapsed, he had erected other scaffolds in the building which was used for installing the machinery; that he was unable to say whether Pickett was present when the scaffold was built, but that he and Tempe selected the lumber that they thought proper; that the plaintiff could see the character of the wood, and examined it to see if it was good, and that it looked sound and good; that he found it all right for the purpose, and did not find any knots in it; that he looked to see if there were knots, but that there were none; that he would not put up any material that had knots in it; that Pickett, the foreman, went up on the scaffold with the plaintiff. After the scaffold fell, it appeared that one of the crosspieces nailed to the uprights broke; that there was a knot in the timber at the place where it broke; and that the nails used to nail this crosspiece to the upright were pulled out. There is also testimony that this timber was painted upon one side, but not on the other, and that persons examining the timber could see the knot upon the unpainted side; that there was plenty of lumber in the building that appeared to be in good condition and proper for the purpose, and it was the breaking of the crosspieces that caused the scaffold to collapse. The knot that caused the timber to break went all through the plank, and it could be seen without any trouble. The only cause of the accident that appears was that a piece of timber selected by the plaintiff and his fellow workmen for the purpose of building this scaffold had a knot, which could be discovered upon inspection, which rendered it so weak that it would not bear the weight placed upon it; and the fall of the scaffold, so far as is disclosed by the testimony, was caused by the use of this piece of timber. Without considering the effect of the labor law, it must be conceded, I think, that this accident was caused by the negligence of the plaintiff and Tempe in selecting improper material for the scaffold, when there was plenty of proper material supplied by the master for that purpose. There is no claim that there was not sufficient lumber in the factory for the purpose; that the defendants or their representatives interfered in any way with the plaintiff and Tempe in the construction of the scaffold, or selection of the lumber to be used. The defendants were not liable. Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; McCone v. Gallagher, 16 App. Div. 272, 44 N. Y. Supp. 697.

It is claimed by the plaintiff, however, that the labor law (chapter 415 of the Laws of 1897, §§ 18, 19) has changed the rule, and that

under that statute the defendants are liable. Section 18 of the act is as follows:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure, shall not furnish or erect or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

And as I understand the prevailing opinion, it is that this provision of the law did apply, and that under it a defendant is liable if a scaffold erected and used for work of this character proves unsafe or insufficient, although its condition is the direct result of the negligence of the individual who is injured. I am unable to agree with either of these propositions. This section imposes upon employers a special duty in regard to scaffolds furnished by the employer for certain specific classes of work. A violation of the section is made a misdemeanor by section 447a of the Penal Code, and undoubtedly a violation of this duty imposed by statute would be evidence of negligence which would justify a finding against an employer furnishing a scaffold for his employés which was not such as required by the statute. It is negligence for an employer not to comply with the provisions of the law, but there is nothing to justify the court in holding that the ordinary rules applicable in actions for negligence should not apply to such a case, and the statute should not be extended beyond its fair meaning. The provision is evidently intended to apply to the erection, repairing, or painting of a building or other structure, to prevent builders from furnishing unsafe and improper scaffolds for their employés in the performance of their work. It seems to me that no construction can be given to this statute which would bring the work that the plaintiff was employed to do within its provisions. The plaintiff and his fellow laborers were employed in removing machinery from one factory to another. They had nothing to do with repairing, altering, or painting the building, but were employed to put up the machinery in the building after it was made ready for that purpose. A scaffold which would be suitable or safe for such purpose might be very unsafe and an unsuitable scaffold if used in the erection, repairing, altering, or painting of the building. The work which the plaintiff was engaged to do was entirely distinct from the work specified in this statute. The strength of the scaffold depended upon the kind of machinery that was being installed, and the danger to be apprehended from an insufficient or unsafe scaffold was entirely different from that which would be incurred in a scaffold used for the erection, altering, or painting of a building. This was all work relating to the machinery, not to the building; and whether or not a scaffold was necessary for that work depended upon the nature of the machinery to be installed, and its distance from the floor. There was nothing to justify the defendants in assuming that these workmen would not know how to erect such a scaffold as was necessary for the purpose of installing the machinery to be installed. Nor did these defendants attempt to provide or procure for their employés any scaffold at all. They sent these men to do the work. The men undertook this work, and in

doing it the men themselves determined what scaffolding was necessary, and they constructed the one they considered necessary. Pickett, the foreman, was present after this scaffold was erected. He expressed an opinion to the plaintiff that the scaffold was safe. There is no evidence that he had any authority to furnish scaffolding for the men, or that he exercised that authority, except that, in answer to a question of the plaintiff, he expressed his opinion that the scaffold was safe; and, so far as appears, it would have been safe, but for the negligence of the plaintiff and his fellow workman in selecting improper timber that they used in its construction. It seems to me that this is clearly a case which was not contemplated by section 18 of the labor law, to which attention has been called, and that act did not apply; that the plaintiff and his fellow laborers were not engaged in the employment specified in the act; that the defendants never furnished, or attempted to furnish, or understood that they were to furnish, a scaffold for the use of the men; and that the act had no application. But even assuming that it did apply, I think the plaintiff is precluded from a recovery upon the ground that the accident happened solely from his own negligence and that of a fellow workman in the selection of materials improper for the purpose, the impropriety of the use of which an examination would have disclosed; and, assuming that there was evidence of the defendants' negligence, the evidence was conclusive that the plaintiff's negligence not only contributed, but was the sole cause of the injury. It could no more be said that this case was within the statute, than, in the case of a carpenter employed to erect a bookcase in a house, and using for that purpose a wooden horse to stand upon, which he had made himself out of materials that he found there, which were insufficient, it would impose a liability upon the master. A scaffolding is as much required to hang a picture upon a wall or erect a bookcase in a house as to install machinery in a factory.

I think that the statute did not apply, but that, whether it did or not, the plaintiff was guilty of contributory negligence, and that the judgment appealed from should be affirmed.

VAN BRUNT, P. J., concurs.