(92 App. Div. 223.)

WINGERT v. KRAKAUER et al.

(Supreme Court, Appellate Division, First Department. March 11, 1904.)

1. INDEPENDENT CONTRACTORS—DUTY OF EMPLOYER.

    Defendants, who had employed independent contractors to install machinery for a piano factory, were under no obligation to erect a scaffold necessary for their use in that work.

2. SAME—MASTER AND SERVANT—APPLIANCE—LABOR LAW.

    Where defendants had employed independent contractors to install machinery in a piano factory, and agreed to furnish two workmen to assist them, and in the course of the work the defendants' foreman directed the workmen to erect a scaffold, without any directions as to the method of doing so, defendants did not furnish or erect the scaffold, so as to render them liable for an injury to one of the workmen, under Labor Law (Laws 1897, p. 467, c. 415) § 18, providing that a person directing another to perform labor in altering a building shall not furnish or erect unsafe or unsuitable scaffolding therefor.

    O'Brien and Hatch, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Erwin W. Wingert against David Krakauer and another. From a judgment in favor of plaintiff, and from an order denying a new trial, defendants appeal. Reversed. See 78 N. Y. Supp. 664.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Chas. C. Nadal, for appellants.

Henry Escher, Jr., respondent.

INGRAHAM, J. The action is to recover the damages sustained by reason of the collapse of a scaffold built by the plaintiff and a fellow workman, and used to install machinery in a factory which was being fitted up by the defendants. Upon the former trial the complaint was dismissed upon the plaintiff's case, which, upon an appeal to this court, was reversed. 76 App. Div. 34, 78 N. Y. Supp. 664. Upon the new trial the question of the defendants' negligence was submitted to the jury, who found a verdict for the plaintiff, and from the judgment thereon entered and from the order denying the motion for a new trial the defendants appeal.

Upon the former appeal the only question discussed in the prevailing opinion was whether section 18 of the labor law (chapter 415, p. 467, Laws 1897) applied to a scaffold such as that erected by the plaintiff. It was there said:

"The main question presented by this appeal, therefore, is, did the changes which were being prosecuted in the defendants' factory constitute the same an alteration, within the meaning of the labor law? * * * It is certainly no greater stretch of construction to hold that placing machinery within a room in a building, and attaching the same firmly to the ceiling, constitutes an alteration of such room, than to hold that a ship upon the ways is a structure within the meaning of the statute. * * * It is not possible to say that when this room, bare as it stood, had appliances firmly fastened to its ceiling for the purpose of supporting heavy shafting, it was not altered. It was being transformed from a bare room into a place for the manufacture of pianos, and it was in a literal sense altered to meet the requirements of the business expected to be carried on. * * * But where the alteration is of such a character as requires the use of scaffolding to effect it, then such

case is fairly brought within the terms of the statute, as it constitutes the use of a structure in the alteration for which the act provides, and the necessity immediately arises for the protection of life and limb, which is the primary purpose to be accomplished. We think, therefore, that the labor law applies to this case, and that the alteration brings it fairly within the terms of the statute; certainly within a liberal interpretation, which the courts are bound to apply in construing it. If these views are sound, it necessarily follows that the court erred in dismissing the complaint."

In determining the question presented upon this appeal we are therefore to assume that section 18 of the labor law applied to such a scaffold as was here used. Assuming, therefore, that this provision of the labor law applies, we are now to determine whether the facts proved upon this trial are sufficient to justify the jury in finding that these defendants were guilty of a failure to perform the duty imposed upon them by this statute. Section 18 of the labor law provides that:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure, shall not furnish or erect or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

And the first question presented is whether these defendants did "furnish or erect or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

The plaintiff, testifying on his own behalf, explained the circumstances under which this scaffolding was constructed. The accident happened January 9, 1899. The plaintiff had been employed by the defendants in their factory from 1891 to 1899, originally as a porter. He subsequently operated a machine, and worked as a joiner and planed off boards. At the time of the accident the defendants were engaged in moving their factory from 126th street to 132d street. About a week before the accident the plaintiff was directed to go up to the new factory at 132d street to place there the machinery necessary for use in their business. While at work in the new factory he, with the other workman, was under the general charge of a foreman named Pickert, who was foreman of machine workers and case makers. The plaintiff worked a week in the new factory before the accident. During that time he helped to build scaffolds used in installing the machinery. The Saturday before the accident Pickert instructed the plaintiff to build a scaffold for placing in position certain shafting and pulleys in the new factory. Pickert told the plaintiff what he wanted the scaffold for, and where it was to be placed, and these directions were given to one Tempe and the plaintiff. That was the only direction that the foreman gave. The plaintiff and Tempe then selected beams from some lumber that was upon the premises, and set them up from the floor to the ceiling, nailing them to the ceiling, and fastening them at the floor with small blocks. After these uprights were in place and fastened to the ceiling and floor, they nailed crosspieces to these beams. Then the plaintiff and Tempe asked Pickert

for the wood to finish the scaffold, and he told them to take the wood that was in the next room. The plaintiff then went in to see what wood was there, and found a lot of old flooring and old partition about five inches wide and seven-eighths of an inch thick. One side of this lumber was painted. There were about 200 pieces of lumber in the room. The witness picked out some of this stuff for cross-pieces, and examined it to see if it was solid, and then he and Tempe sawed this selected lumber into proper lengths. Tempe and the plaintiff then nailed to the uprights the lumber that they had sawed, but neglected to put in braces on the crossbeams. There was a brace at either end of the scaffold. They then proceeded to place boards on top of the crosspieces. This scaffold was finished on Saturday evening, and no more work was done on that day. Some time on Saturday, Pickert was present, and plaintiff asked him whether the scaffold was strong enough, and Pickert said, "The scaffold is strong enough." On Monday morning, when the men went to work, they took boards and screwed them on the ceiling, and on the boards they screwed the "hangers," with a hook upon which a shaft was to run. In the afternoon the men had completed that work, and got the hangers up all ready to put the shafting on. There were then two machinists, Tempe and the witness, engaged in this work. When the shafting was lifted upon the scaffold to be put in place, Pickert, the foreman, and a man named Lindstrom were present, having been requested to help place the shaft in position. This shaft was placed upon the scaffold with the pulleys that were to be attached to it. Then Pickert and Lindstrom, the two machinists, Tempe, and the plaintiff went up on the scaffold, and started to put the shafting and the pulleys on the hangers. As they started to lift up the shafting one of the crosspieces upon the scaffold broke, the whole scaffold collapsed, and the plaintiff received injuries which resulted in a portion of his leg being amputated.

Upon cross-examination the plaintiff testified that he had worked at planing and joining wood for about five years before the accident, operating machines in which steam power was used; that the wood that was used in the construction of this scaffold had been brought by the defendants from their old factory, and the shafting that was put up was shafting that had been used in the old factory; that Tempe and the plaintiff built the scaffold, and themselves adopted the method and the materials that were used; that there was plenty of lumber in the room from which the plaintiff selected what he used, and the only directions that were given to the plaintiff and Tempe by either the foreman or the machinists was that the plaintiff and Tempe should build the scaffold; that there was no direction from either the foreman or from any one else as to how the scaffold should be built—that was left to the plaintiff and Tempe; that they were simply directed by Pickert to build the scaffold, and to take the lumber for that purpose from the next room; that, "I only know that he told us that we should build the scaffold, and that we should take wood from inside; that is what I know; inside was the third room I have spoken of;" and that after having received this instruction the plaintiff said, "Now, we have to build a scaffold," to which Tempe acceded.

The plaintiff also called one of the machinists engaged in installing this machinery, who was not in the employ of the defendants, and who testified that he observed the pile of lumber from which the timbers were taken for the construction of this scaffold, and that there was plenty of lumber there from which to build the scaffold; that he noticed the scaffold after it was built, and that it looked all right to him. Other witnesses called by the plaintiff also testified that there was plenty of lumber upon the premises to build the scaffold, of all kinds of length, width, and thickness, and that there was old lumber and new lumber. The plaintiff also called an expert, who testified that he was familiar with scaffold building, and that this scaffold as erected was not strong enough for the weight that was placed upon it; that it was capable of holding only about 600 pounds; that if upon such a scaffold six men were placed, averaging in weight about 150 pounds, a shafting consisting of a steel rod, being $2^{15}/_{16}$ of an inch in diameter, and about 18 feet long, with three pulleys, the aggregate weight of the shaftings and pulleys being 1,000 pounds, it would fall; that to make such a scaffold safe for such a weight the crosspiece, instead of being seven-eighths by four and a half inches, should have been at least seven-eighths by nine inches, and that with such additions the scaffold would have been safe; that if, instead of having a plank nine inches wide, they had used two planks, each about five or five and a half inches, one under the other, that would have had sufficient strength to carry 2,000 pounds.

After the collapse of the scaffold, it was ascertained that one of the pieces of timber used to brace it had a large knot in it; that this piece of timber was broken across the knot, and that the nails used to hold the scaffold and bracings together had been pulled out. Pickert, who has been described as the foreman, testified that the installation of this machinery was under the direction of the machinists, who were not in the employ of the defendants; that he did not at any time tell the plaintiff to build the scaffold; that he gave no instructions as to how the scaffold should be built; that he did not know who built it, and did not see it built; that there was a quantity of lumber, much more than was used to build the scaffold or necessary for that purpose, on the premises; that just before the accident he was in the building, when one of the machinists came and asked for two men to help lift the shafting; that the witness went down into the basement, and instructed two men working there to go up and help; that one of them went with the witness to the scaffold; that when he arrived there the plaintiff and two other men were working out on the scaffold, and he went up to assist them; that none of the men asked him whether the scaffold was strong enough, and that he did not tell any one that it was; that neither of the defendants nor any one acting for them gave any directions as to how this machinery was to be installed; that the plaintiff and Tempe were directed to assist the machinists, who were working under an independent contractor, who had made a contract to install this machinery; that he saw the scaffold after it was built, and before the shafting was put on top of it, and that he saw how it was built, and what material was in it, and that it looked all right and perfectly safe to him; that before he got to the scaffold the plaintiff

and other men were upon it, and had placed upon it the shafting and pulleys; that just before the scaffold collapsed the men started to lift up the shafting to put it in place, and as the shafting was being lifted up the scaffold collapsed.

The machinist who had made the contract with the defendants to install this machinery testified that he made a verbal agreement with the defendants in regard to moving and placing some machinery for them; that the understanding was that he was to move the machinery from the old factory into the new one; that he was to furnish two good men and the material that was needed; that he was to do what the defendants' foreman proposed to do, so as to get it running in proper shape, so that he was to set up the machinery in the new factory; that the defendants' men were working along with his men; that he had to set the shafting where the defendants wanted it, and that he was to do as defendants' foreman directed him to do; that nothing was said about the building of the scaffold for the purpose of putting up any shaftings; that the witness sent two machinists to do the work; that the defendants or their foreman had directed where the machinery was to be placed, and the machinists employed by the witness decided as to the way in which it should be set up; that in setting up machinery of that kind scaffolding was ordinarily used; that the machinists employed by the witness to work upon this job were old experienced millwrights, and had built scaffolds while in the witness' employ, which had been four or five years before the accident; that it was part of the machinists' work to build scaffolds when necessary in putting up machinery.

The defendants moved to dismiss the complaint, which was denied.

Assuming that this provision of the labor law to which attention has been called was applicable, the question first presented is whether or not it was the duty of the defendants to furnish a scaffold for the work that was thus being done, or whether they actually assumed to furnish such a scaffold, which was unsafe and in violation of the law. They had made a contract with the machinists to install this machinery. They furnished workmen to help the machinists who were engaged in performing that contract. While these men were thus employed helping the machinists, defendants' foreman directed the men to build a scaffold, and also directed them to use the timber on the premises, and the plaintiff and his fellow workman proceeded with this work. The workmen selected the timber to be used, and determined themselves upon the character of the scaffold and the manner of constructing it, and they completed the scaffold without any interference in any way by either the defendants or their foreman. The plaintiff's evidence tends to show that the scaffold that he constructed, assuming that it had been sound timber, was not sufficient to hold the weight that was placed upon it. But, so far as appears, neither the defendants nor their foreman had any knowledge as to the weight that it was expected to bear or the manner in which it was to be used. The defendants did not undertake to provide scaffolds for use in installing this machinery. They were not putting it in place. They had made a contract with the machinists to do that work, and their employés, the plaintiff, Tempe, and Pickert, were there to assist the machinists when they

required assistance; and 'while at this work they undoubtedly were under the orders of Pickert, but when Pickert directed them to build the scaffold to assist the machinists, who were acting under an independent contract, he was simply directing them to assist the independent contractor, and not directing how the independent contractor should do his work, or furnishing either the plaintiff or the independent contractor with a scaffold. There was no obligation upon the defendants to provide this scaffold for the men who were engaged in installing this machinery, nor did the defendants assume such an obligation; and when the plaintiff and Tempe undertook to build this scaffold, and, with plenty of materials there to construct it properly and safely, determined for themselves the method of construction, without direction from either the defendants or their foreman as to how it should be constructed or as to the materials to be used in its construction, it certainly cannot be said that these defendants built the scaffold or furnished it for the plaintiff's use. So far as appears, the plaintiff and Tempe knew as much about scaffold building as either the defendants or Pickert, their foreman. The machinists who were at work in the building were competent men, and used to the business of constructing scaffolds for use in installing machinery. They certainly knew much more about it than either the defendants or their foreman. As the accident was caused by the improper construction of the scaffold, or to the use to which it was put, or the selection of the materials by the plaintiff and his fellow workmen, they, and not the defendants, are responsible. The statute provides that "a person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper." And it is only the person who furnishes or causes to be furnished an unsafe or unsuitable scaffold to his employés who is guilty of a violation of this statute. I take it, if these defendants were indicted for a misdemeanor under this statute, that upon this evidence no conviction would be allowed. When the scaffold collapsed because the men who built it failed to select the proper material or to sufficiently strengthen it, the accident was caused, not by the failure of the defendants to perform any duty devolving upon them to perform, or which they had assumed to perform, but because the plaintiff and his fellow workmen improperly did the work which they were instructed to do, and the accident was therefore wholly due to the negligence of the plaintiff and his fellow workman.

It follows that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellants to abide the event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

O'BRIEN, J. I dissent. It is assumed that by force of our prior decision the defendants would be liable if they erected or caused to be erected the scaffold in question. Although plaintiff and his witnesses testify that defendants' foreman, Pickert, told them to erect the scaf-

fold, and while it must be conceded that Pickert was the alter ego of and represented the defendants, yet it is said the latter can escape liability because testimony is given tending to show that defendants had a contract with some machinist, who in erecting the machinery were under a contract to furnish the appliances necessary for such construction, which would include a scaffold if needed. This seems to me to be immaterial, because it was not shown that plaintiff knew, or had reason to know, of any such contract with the machinists, and the fact that Pickert directed plaintiff to assist in the erection of the scaffold, and told him where he could get the lumber, negatives the inference that he was a mere volunteer or gratuitous helper in something which did not relate to his employment.

It would be a novel proposition if a servant directed to do a particular thing should, instead of obeying the master, inquire if it was not some one else's duty to do it. What difference legally can it make whether somebody else did or did not agree with the master to do it, if the latter directs his employés to do it. Nor am I impressed with the evidence in support of such a defense. It would appear to have been an afterthought, or such the jury might have concluded, because on its face it is incredible that one who employed an independent contractor to do the work should at his own cost furnish the labor and material necessary for the construction of the scaffold.

In my opinion the most serious question is whether under the law an employer is liable for injuries suffered by an employé on a scaffold which the employé himself builds, the master having furnished a sufficiency of the material from which it could be safely built. This question, I think, must in part turn upon a consideration of whether or not the employé did or did not know how to build a safe scaffold.

Here the plaintiff was not a scaffold builder, and the evidence tends to show that, even if sound timber had been used, it would not have averted the accident, for the reason that it was not sufficiently braced to hold the weight that was placed upon it. It is said by Judge INGRAHAM that, "so far as appears, neither the defendants nor their foreman had any knowledge as to the weight that it was expected to bear." And again, "The plaintiff and Tempe knew as much about scaffold building as either the defendants, or Pickert, their foreman." Here, again, I think Judge INGRAHAM begs the question, his whole discussion proceeding upon a theory which might well apply if this were a question between the contracting machinists and the defendants. As between them, it may be true that "defendants did not undertake to provide scaffolds for use in installing this machinery."

But how can all this affect the liability of the plaintiff? The latter, without knowledge of the relations between the defendants and the machinists, was told to work on a scaffold by defendants, and this scaffold was unsafe and insecure, and he was injured. Under the law, this made them liable unless the fact to which we have adverted, that the plaintiff had a part in the selection of the lumber and in the labor that was expended in erecting the scaffold would change the rule. Section 18 of the labor law provides that "a person employing  *  *  * another to perform labor  *  *  *  shall not furnish or erect or cause to be furnished or erected for the performance of such labor scaffold-

ing * * * which are unsafe, unsuitable or improper and which are not so constructed, placed and operated as to give proper protection to the person so employed or engaged." This imposes an obligation which cannot be delegated, and I do not think that the responsibility which is thus placed on the master by the law is discharged by having a scaffold built by incompetent men, though in his employ, and then, when one of them is injured while working on what is shown to have been an improperly constructed scaffold, that the master can escape because the man injured was one whom the master directed to construct the scaffold. If the master causes the erection of "an unsafe, unsuitable or improper scaffold," and directs his employés to use it, he is liable if one of them is injured by reason of the defective construction.

I am for affirmance.

HATCH, J., concurs.