### SIVERSEN v. JENKS.

(Supreme Court, Appellate Division, Second Department. March 3, 1905.)

1. MASTER AND SERVANT—DUTIES OF MASTER—SAFE PLACE TO WORK—DELEGA-
   TION OF DUTY.
      It is the duty of a master to furnish a servant engaged in construction work a safe and suitable scaffold upon which to perform his labors, and such duty is an absolute one, the performance of which the master may not delegate to another.
      [Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 207.]

2. SAME—QUESTIONS FOR JURY.
      Whether a master had furnished a servant an unsuitable, unsafe, or improper scaffold on which to work, held, under the evidence, a question for the jury.

3. SAME—OBVIOUS DANGERS—ASSUMPTION OF RISK.
      Evidence held not to show, as a matter of law, that the dangers inherent in a scaffold on which a servant was working were obvious and apparent, and assumed by the servant.

4. SAME—DEFECTIVE SCAFFOLDINGS—CUSTOMARY MODE OF CONSTRUCTION.
      Where a scaffolding furnished to a servant engaged in building a dock was in fact negligently constructed, so as to be rendered unsafe, the servant was entitled to recover for injuries caused through such negligence, regardless of the usual mode of construction of scaffolds by dock builders, and the conformity or noncomformity of the scaffold constructed by the master thereto.

Appeal from Trial Term, Kings County.

Action by Erik B. Siversen against William H. Jenks. From a . judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, RICH, and MILLER, JJ.

L. Sidney Carrere, for appellant.

Melville J. France and Abram H. Dailey, for respondent.

RICH, J. The plaintiff brings this action to recover damages for personal injuries alleged to have been sustained by him through negligence on the part of the defendant. He was an employé of the defendant, who was engaged in constructing a dock at the foot of William and Ferry streets, in the borough of Manhattan, 80 feet in width, and which had been partially completed some five or six hundred feet in length. In its construction rows of piles were driven lengthwise 5 or 6 feet apart, and crosswise 10 feet apart, projecting above the water, the tops of which were required to be framed into tenons to hold mortised timbers to fit over the same. Stay laths (3 by 10 planks) were nailed to these rows of piles running crosswise of the dock, their purpose being to keep the rows of piles in place and in alignment, and to support planks, the ends of which were laid upon them, thus forming a platform or scaffold, 2 feet above water at high-water mark, for the employés to stand upon in performing their work; and spreaders (planks of about the same size) extended along the two outside rows of piles, running lengthwise of the dock. Upon the piles "side caps" and "cross-caps," composed of 12 by 12 timbers, 30 to 40 feet in length, were placed; the side caps extending on the outside rows the length of the dock, and the cross-caps across the dock on each row. The plaintiff's work was to put the side caps on the ends of the outer rows of piles forming the sides of the dock, fastening them with mortise holes and tenons. He had not participated in any of the work connected with driving or placing the piles in position, with the stay lathing, or construction of the platform or scaffold, or placing the planks forming the same. The office of the spreaders, when used, was to prevent the piles from spreading, and stiffen and hold them more firmly and rigidly in position. They had been used on the outer rows of piles, where plaintiff's work had been performed, but none were used elsewhere in the construction of the dock. On the day of the accident the stay laths and rows of piles spread enough to let the planks forming the scaffold upon which plaintiff stood fall into the water, in consequence of which his right hand was caught and crushed between a plank and the piles.

The theory of the plaintiff's case is that the scaffolding furnished him by the defendant upon which to perform his work was "unsafe, unsuitable, and improper," and "not so constructed, placed, and operated" as to give him proper protection, by reason of the omission of spreaders in the center of the dock, the use of which, he contends, was necessary to steady and stiffen the scaffolding, and to prevent the rows of piles from spreading, and permitting the planks forming the platform of

the scaffolding to slip off the stay laths and fall, as they did at the time of the accident.

It was the duty of the defendant to provide plaintiff a safe and suitable scaffold upon which to perform his labors, and, as was said in McLaughlin v. Eidlitz, 50 App. Div. 518, 520, 64 N. Y. Supp. 193, 195:

"The duty thus to furnish being absolute, the obligation is at all times made the act of the master, which he may not delegate to another, and from which he may not shelter himself from responsibility if the structure be in fact unsuitable and unsafe."

And the question as to whether defendant had furnished an unsuitable, unsafe, or improper scaffold was for the jury.

The defendant's contention that the dangers, if any, were obvious and apparent, and assumed by the plaintiff, as matter of law, cannot be sustained. It cannot be held, as matter of law, that the risk of the scaffolding in question falling, under the circumstances described by the witnesses, was voluntarily assumed by him. Wingert v. Krakauer, 76 App. Div. 34, 42, 78 N. Y. Supp. 664. Counsel for the appellant assumes that the jury necessarily found the existence of a universal custom and precaution among dock builders, neglected by defendant, of putting at least one row of spreaders through the center of a dock while in process of construction; but it is not conceived that it was necessary for the jury to so find, to warrant the rendition of a verdict for the plaintiff. The fact, if established to their satisfaction by the evidence, that the scaffolding furnished plaintiff for his use as an employé by the defendant was, through negligence in its construction, arising from the omission of the use of spreaders or from any other cause, "unsafe, unsuitable, and improper," and "not so constructed, placed, or operated as to give proper protection to the life and limb" of plaintiff, warranted a verdict in his favor, without reference to the question of an established custom among dock builders as to their use or omission. It was the duty of defendant, which he could not delegate to others, to determine and adopt such plan as would reasonably result in furnishing and constructing for plaintiff's use a scaffolding in accordance with the requirements of the statute; and, failing in the performance of such duty, he was liable for the injury resulting therefrom, in the absence of contributory negligence on the part of the plaintiff.

We are of the opinion, after a careful examination of the record, that the issues involved were properly submitted to the jury, that their verdict is sustained by the evidence, and the judgment ought to be affirmed.

Judgment and order appealed from affirmed, with costs. All concur.