ERIK B. SIVERSEN, Respondent, *v.* WILLIAM H. JENKS, Appellant.

*Negligence — injury from a defective scaffold — the duty to furnish a safe scaffold cannot be delegated by the master — it is not affected by a usage of construction — the question is one of fact — assumption of risk.*

In an action brought to recover damages for personal injuries sustained by the plaintiff through the alleged negligence of the defendant, his employer, it appeared that the defendant was engaged in constructing a dock; that in such construction rows of piles were driven lengthwise and crosswise of the dock; that stay laths were nailed to the rows of piles running crosswise of the dock, for the purpose of keeping such rows of piles in place and in alignment, and for the purpose of affording a support for planks which were laid across them and formed a scaffold for the employees to stand upon; that planks known as spreaders also extended along the two outside rows of piles running lengthwise of the dock, the office of which was to prevent the piles from spreading and hold them rigidly in position; that these spreaders were used only on the outer rows of piles last mentioned; that on the day of the accident the stay laths and rows of piles spread enough to let the scaffold upon which

the plaintiff stood fall into the water, in consequence of which the plaintiff's right hand was caught and crushed between a plank and the piles.

The plaintiff had not participated in any of the work connected with driving or placing the piles in position, or with the stay lathings or the construction of the platform or scaffold.

The theory of the plaintiff was that the scaffolding furnished him by the defendant upon which to perform his work was "unsafe, unsuitable or improper" and "not so constructed, placed and operated" as to give him proper protection by reason of the omission of "spreaders" in the center of the dock.

*Held*, that it was the duty of the defendant to furnish the plaintiff with a safe and suitable scaffold upon which to perform his labor;

That this duty was absolute and that the defendant could not delegate the performance thereof to another, and thus shield himself from liability if the structure furnished was in fact unsuitable or unsafe;

That the fact that the scaffolding furnished plaintiff for his use as an employee, by the defendant, was, through negligence in its construction, arising from the omission of the use of "spreaders" or from any other cause, "unsafe, unsuitable or improper" and "not so constructed, placed and operated as to give proper protection to the life and limb" of plaintiff, warranted a verdict in his favor *without reference to the question of* an established custom among dock builders as to the use or omission of spreaders in the center of the dock;

That the question whether the defendant had furnished an unsuitable, unsafe or improper scaffold was for the jury and that their determination of that question in favor of the plaintiff should not be disturbed;

That it could not be said as matter of law that the plaintiff voluntarily assumed the risk of the falling of the scaffold.

APPEAL by the defendant, William H. Jenks, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 15th day of February, 1904, upon the verdict of a jury for $6,000, and also from an order entered in said clerk's office on the 10th day of March, 1904, denying the defendant's motion for a new trial made upon the minutes.

*L. Sidney Carrère*, for the appellant.

*Melville J. France* [*Abram H. Dailey* with him on the brief], for the respondent.

RICH, J.:

The plaintiff brings this action to recover damages for personal injuries alleged to have been sustained by him through negligence on the part of the defendant. He was an employee of the defendant, who was engaged in constructing a dock at the foot of William

and Ferry streets in the borough of Manhattan, eighty feet in width, and which had been partially completed some five or six hundred feet in length. In its construction rows of piles were driven lengthwise five or six feet apart, and crosswise of the dock ten feet apart, projecting above the water, the tops of which were required to be framed into tenons to hold mortised timbers to fit over the same. Stay laths (three-by-ten planks) were nailed to these rows of piles running crosswise of the dock, their purpose being to keep the rows of piles in place and in alignment, and to support planks the ends of which were laid upon them, thus forming a platform or scaffold, two feet above water at high-water mark, for the employees to stand upon in performing their work, and spreaders (planks of about the same size) extended along the two outside rows of piles running lengthwise of the dock. Upon the piles "side caps" and "cross caps," composed of twelve-by-twelve timbers, thirty to forty feet in length, were placed, the "side caps" extending on the outside rows the length of the dock, and the "cross caps" across the dock on each row.

The plaintiff's work was to put the "side caps" on the ends of the outer rows of piles forming the sides of the dock, fastening them with mortise holes and tenons. He had not participated in any of the work connected with driving or placing the piles in position, with the stay lathings, or construction of the platform or scaffold, or placing the planks forming the same. The office of the spreaders, when used, was to prevent the piles from spreading, and stiffen and hold them more firmly and rigidly in position. They had been used on the outer rows of piles, where plaintiff's work had been performed, but none were used elsewhere in the construction of the dock. On the day of the accident the stay laths and rows of piles spread enough to let the planks forming the scaffold upon which plaintiff stood fall into the water, in consequence of which his right hand was caught and crushed between a plank and the piles.

The theory of the plaintiff's case is that the scaffolding furnished him by the defendant upon which to perform his work was "unsafe, unsuitable or improper" and "not so constructed, placed and operated" as to give him proper protection by reason of the omission of "spreaders" in the center of the dock, the use of which he contends was necessary to steady and stiffen the scaffolding and to pre-

vent the rows of piles from spreading, and permitting the planks forming the platform of the scaffolding to slip off the stay laths and fall, as they did at the time of the accident.

It was the duty of the defendant to provide plaintiff a safe and suitable scaffold upon which to perform his labors, and as was said in *McLaughlin* v. *Eidlitz* (50 App. Div. 518, 520): "The duty thus to furnish being absolute, the obligation is at all times made the act of the master, which he may not delegate to another, and from which he may not shelter himself from responsibility if the structure be in fact unsuitable and unsafe." And the question as to whether defendant had furnished an unsuitable, unsafe or improper scaffold was for the jury.

The defendant's contention that the dangers, if any, were obvious and apparent and assumed by the plaintiff, as matter of law, cannot be sustained. It cannot be held, as matter of law, that the risk of the scaffolding in question falling, under the circumstances described by the witnesses, was voluntarily assumed by him. (*Wingert* v. *Krakauer*, 76 App. Div. 34, 42.) Counsel for the appellant assumes that the jury necessarily found the existence of a universal custom and precaution among dock builders, neglected by defendant, of putting at least one row of "spreaders" through the center of a dock while in process of construction, but it is not conceived that it was necessary for the jury to so find to warrant the rendition of a verdict for the plaintiff. The fact, if established to their satisfaction by the evidence, that the scaffolding furnished plaintiff for his use as an employee, by the defendant, was, through negligence in its construction, arising from the omission of the use of "spreaders" or from any other cause, "unsafe, unsuitable or improper" and "not so constructed, placed and operated as to give proper protection to the life and limb" of plaintiff, warranted a verdict in his favor without reference to the question of an established custom among dock builders as to their use or omission. It was the duty of defendant, which he could not delegate to others, to determine and adopt such plan as would reasonably result in furnishing and constructing for plaintiff's use a scaffolding in accordance with the requirements of the statute, and failing in the performance of such duty he was liable for the injury resulting therefrom, in the absence of contributory negligence on the part of the plaintiff.

We are of the opinion, after a careful examination of the record, that the issues involved were properly submitted to the jury, that their verdict is sustained by the evidence and the judgment ought to be affirmed.

Judgment and order appealed from affirmed, with costs.

Present — HIRSCHBERG, P. J., WOODWARD, JENKS, RICH and MILLER, JJ.

Judgment and order unanimously affirmed, with costs.