court, where the cause was reversed (67 N. Y. Supp. 172), and plain-
tiff appeals. Appeal dismissed.

Argued before VAN BRUNT, P. J., and INGRAHAM, Mc-
LAUGHLIN, and LAUGHLIN, JJ.

George H. Hart, for appellant.

Samuel Scoville, Jr., for respondent.

McLAUGHLIN, J. Appeals can only be taken from determina-
tions of the appellate term to the appellate division by permission
of the "justices by whom such appeal was determined." Section
1344, Code Civ. Proc. In the present case such permission was
not obtained, and therefore this court is not authorized to entertain
jurisdiction of the appeal. It is true permission was obtained from
other justices sitting at the appellate term, but this does not comply
with the section of the Code referred to. Permission must be ob-
tained from the justices by whom such appeal was determined, and
not from others. The reason of this provision is manifest. The
justices who made the decision from which an appeal is desired to
be taken are familiar with the facts and the legal questions involved,
and for that reason can intelligently determine whether the same are
of sufficient importance to justify another court in passing upon
them.

It follows, therefore, that inasmuch as this court has no authority
to hear the appeal, the cause must be stricken from the calendar.
All concur.

---

### CHAFFEE v. ERIE R. CO.

(Supreme Court, Appellate Division, Fourth Department. January 7, 1902.)

1. MASTER AND SERVANT—TERMINATION OF RELATION—TIME—QUESTION FOR
   JURY.
      In an action by an employé for injuries received defendant introduced
   documents showing a transfer of the premises to a third person of a
   date prior to the accident, and evidence that the transfer actually oc-
   curred prior thereto. The execution of the documents was not completed
   until after the accident, some of the acknowledgments being taken and
   revenue stamps being affixed at that time. Testimony was given that
   there had been no perceptible change in the management at the time
   of the accident, and that plaintiff continued to receive his pay from the
   defendant. Held not sufficient to show as matter of law that the transfer
   took place prior to the accident, and that, therefore, the relation of
   master and servant had ceased.

2. SAME—CONSTRUCTION OF VESSEL—DEFECTIVE SCAFFOLDING—LABOR LAW.
      A vessel in course of construction in a ship yard is a "structure,"
   within the labor law (Laws 1897, c. 415), providing that a person em-
   ploying another in the erection or repairing of a "house, building, or
   structure" shall not erect unsafe scaffolding.

Appeal from trial term, Erie county.

Action by Frank Chaffee against the Erie Railroad Company for
injuries sustained by plaintiff through the falling of a scaffold while
he was at work on a vessel being built at the Union Dry Dock in
the city of Buffalo. The Union Dry Dock Company and the Amer-

ican Shipbuilding Company were originally joined as codefendants, but the action was dismissed as to them by consent. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Adelbert Moot, for appellant.

John Laughlin, for respondent.

HISCOCK, J. Concededly for some time prior to November 1, 1900, the defendant was the owner and operator of the Union Dry Dock in the city of Buffalo, wherein ships were built. Upon the trial it was a question, to be hereinafter discussed, whether such ownership and operation continued over and included November 8, 1900, the day of the accident. Upon and for some time prior to said last-mentioned date there was being constructed at said ship yard a vessel to be known as the Wilkesbarre, which was designed for use upon the lakes, and was of iron construction, being over 400 feet long, about 48 feet wide in the widest portion of its hull, and having a depth from bottom to rail of 26 or 28 feet. There were to be four bulkheads in it. Prior to November 1, 1900, plaintiff was concededly in the employ of defendant, the question of his status thereafter being involved in the question of ownership and management of the yard hereinabove referred to. He was engaged upon the construction of the vessel above referred to, and· at the time of the accident was immediately employed in the construction of one of the bulkheads. This latter construction involved the putting in place of heavy plates of iron. To accomplish this, a staging had been built in the hold of the vessel by laying large planks crosswise of the hold six or seven feet from its bottom, and resting at each end upon the channel iron at the side, and which cross-timbers are designated as "cross-pawls." Crosswise of these crosspawls, and thus running parallel with the length of the vessel, were laid planks, which furnished the floor or platform of the staging upon which the men stood and worked. At the time of the accident plaintiff was engaged with some of his co-employés in raising one of the bulkhead plates to its position, when one of the planks laid upon the cross-pawls broke, precipitating him and the heavy iron plate to the bottom of the vessel, and causing the injury to his leg. This plank was defective in that it had a large knot in it where it broke. It was a question upon the trial whether the gang of men in which plaintiff worked had anything to do with the erection of this staging or scaffolding. Defendant gave evidence to the effect that there were furnished plenty of sound planks and timber with which to construct the staging, and also that it had furnished competent employés to look after and do such work. Defendant sought to show, as hereinbefore indicated, that on or just prior to November 1, 1900, the ownership and management of the yard in question, including the construction of the boat in question and the employment of plaintiff and his associates, changed by reason of a transfer made at that time. For this purpose it put in evidence certain documents purporting to make such a transfer from it to

one Gaskin, a former employé, and one Warfield, as of October 29, 1900, and another document purporting to make a corresponding transfer as of November 1, 1900, from said Gaskin and Warfield to one Hoyt, as trustee, who subsequently transferred the property to the American Shipbuilding Company. These documents upon their face were broad enough to accomplish such a transfer as is claimed by defendant. In addition, evidence was given by Gaskin that a transfer did take place under these documents on November 1, 1900. Gaskin and Warfield seem to have been simply intermediaries acting for the purpose of accomplishing a transfer from the defendant to somebody else of the property in question. In opposition to defendant's contention it appeared that the execution of the documents in question was not completed until November 9, 1900, or the day after the accident in question. Some of the acknowledgments were taken and revenue stamps affixed on that day. In addition, testimony was given that there was no perceptible change in the management of the yard prior to November 8th, and that plaintiff continued to receive his pay for ·the period including that day, the same as he did before November 1st, from or in behalf of the Erie Railroad Company, this fact being evidenced by printed time slips which bore the name of the defendant. The question whether plaintiff ought to have seen the defect in the plank which broke, and generally his conduct as free or not from contributory negligence, was submitted to the jury as an issue of fact in a manner to which no exception was taken by defendant.

Upon the evidence to which we have above referred that it furnished sufficient material and competent employés with which and by whom suitable scaffolding and staging should be constructed for· the performance of plaintiff's work, defendant sought exemption from liability for plaintiff's injuries, within the principle laid down in Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017, and other similar cases, that such construction was a matter of detail which might properly be delegated by the employer to his servant. The learned trial justice, however, ruled against this theory of defendant, holding that under the provisions of chapter 415 of the Laws of 1897, commonly known as the "Labor Law," a duty was imposed upon the employer, which could not be delegated, of exercising reasonable care and diligence to make the scaffolding upon which plaintiff was working safe and proper; and this ruling, involving the interpretation of said statute, presents two of the three questions formulated by appellant's counsel in his brief. Defendant further sought to have the court hold as a matter of law that there had been such a transfer by defendants prior to November 8th of the yard and work wherein and whereon plaintiff was engaged that the relation of employer and employé no longer existed between it and him, and that, therefore, there could be no liability for the accident in question. This the trial justice refused to hold as matter of law, submitting it to the jury to say as a question of fact upon all of the evidence whether such transfer and change had taken place prior to the date in question. He plainly and explicitly instructed the jury that, if they found that the transfer and change had taken place

before the date in question, even though plaintiff knew nothing of it, defendant was exempted from liability, and there could not be a recovery in this case. This ruling upon this subject presents the remaining question argued upon this appeal. It is sufficient for us to say, without extended discussion, in addition to the recapitulation made of some of the evidence bearing upon it, that the disposition of this last issue by the trial justice was as favorable to defendant as it was entitled to have, and we pass to the consideration of the questions first suggested.

The statute upon which the trial justice based his refusal to charge, as desired by defendant, that the construction of the scaffolding which broke was a detail of work which could be delegated to employés, reads as follows:

"A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure, shall not furnish or erect or cause to be furnished or erected for the purpose of such labor, scaffolding, * * * which are unsafe, unsuitable or improper."

Defendant's counsel does not claim that the instructions given to the jury as to the obligations which this statute imposed upon defendant in the erection of the scaffolding were improper, provided the statute applied to this case. He asks in his brief: "Is a vessel in course of construction in a ship yard a 'structure,' within the meaning of that part of the labor law as to the duty of the master when erecting scaffolds about buildings and structures in course of erection?" That, therefore, is the precise question which we are called upon to decide upon all of the facts appearing in this case. Some suggestion, perhaps, was made upon the argument that the staging or construction of cross-pawls and planks upon which plaintiff was at work might not be a "scaffold" within the meaning of the statute. We think it so clear, however, both upon principle and authority, that it was, that we do not deem it necessary to discuss such suggestion, if at all relied upon. McLaughlin v. Eidlitz, 50 App. Div. 518, 64 N. Y. Supp. 193. We quite readily conclude also that this vessel was a structure, within the meaning of the statute, so that the obligations of the latter attached to defendant requiring it to use reasonable diligence in the construction and furnishing of a safe scaffolding. In construing the meaning of this word we are entitled to consider the purpose of the statute and the context in which it is found, as well as the meaning which it would have singly and of itself. The purpose of the statute was to insure greater protection and security for workmen. The courts had established the rule already referred to that an employer might relieve himself from any personal responsibility in the construction of a scaffold. This statute revoked such rule, and placed upon him the obligation of a personal duty to exercise proper care to make any such construction safe for the men who might be called to go upon it. The underlying thought, of course, was that a scaffold, by its very nature, would be raised a greater or less distance from the ground, and that a faulty or negligent construction causing it to give way would, in many cases, result in serious injuries to those who were upon it.

The injury of workmen falling by reason of defective scaffolds was the thing to be avoided. It was an entirely immaterial circumstance before this general purpose whether the scaffold should happen to be around a house, a barn, a vessel, or a flag pole. If it fell 40 feet, the man upon it would be injured in one case as readily as in the other, and it was against that injury that the legislature sought to guard by imposing additional responsibilities upon the employer in favor of the employé. Likewise, when we consider the other words used in connection with this one, we find ample warrant for giving it a broad and liberal meaning. The use is forbidden of unsafe and improper scaffolding in the case of "a house, building, or structure." The words "house" and "building" of themselves would embrace most of the occasions calling for the use of scaffolding. But their meaning would be subject to one of the limitations urged by the learned counsel for the appellant against the word "structure." They would naturally imply constructions upon land. There would also be other limitations. And so we find added the last word, broader and less restricted in its meaning than either, and manifestly designed to include erections and objects of construction not covered by the other words. It was intended by its use to broaden and widen the scope of the statute and the consequent protection under it. The word "structure," measured by its derivation, means something which is arranged, built, or constructed. Webst. Dict. Bouvier defines it to mean that which is built or constructed. It has been judicially construed, amongst other things, to include poles planted in the ground, and connected together by wires and insulators (Forbes v. Electric Co., 19 Or. 61, 23 Pac. 670, 20 Am. St. Rep. 793); a railway (Giant Powder Co. v. Oregon Pac. Ry. Co. [C. C.] 42 Fed. 470, 8 L. R. A. 700); a mine or pit sunk within a mining claim (Helm v. Chapman, 66 Cal. 291, 5 Pac. 352). Keeping in mind the purpose and wording of the statute, and the fair meaning of the word, we think it would be narrow and indefensible for us to hold that the statute applied to a scaffold around a building 10 feet square, and not to one employed in the construction of the hull of a vessel 400 feet long, 48 feet wide, and nearly 30 feet high. The judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.