### MADDEN v. HUGHES et al.

(Supreme Court, Appellate Division, Second Department. April 21, 1905.)

1. MASTER AND SERVANT—INJURIES TO SERVANT—LABOR LAW—REPAIR OF STRUCTURES.

A servant engaged in placing large beams lengthwise across the middle of each of the pockets of a scow—the ends resting in holes bored in the bulkheads—is engaged in repairing or altering a structure, within the meaning of the labor law (Laws 1897, p. 467, c. 415, § 18), requiring persons employing another to perform labor in repairing or altering a build-

ing or structure to furnish safe and suitable scaffolding or other mechanical contrivances.

**2. SAME—ERECTION OF SCAFFOLD.**

That a servant brought planks to another servant, with which to construct a scaffolding or contrivance on which to do work, does not render the former servant the builder of the contrivance, so as to preclude him from recovering, under the labor law (Laws 1897, p. 467, c. 415, § 18), requiring one employing another to provide safe and suitable scaffolding and mechanical contrivances, for injuries sustained while laboring thereon.

**3. SAME—DUTIES OF MASTER—DELEGATION TO SERVANTS.**

The labor law (Laws 1897, p. 467, c. 415, § 18), requiring a person employing another to work in erecting or repairing a house or structure to furnish safe scaffolding or other mechanical contrivances, imposes an absolute duty on the master, which he cannot delegate so as to relieve himself from liability for injuries to a servant caused by the improper construction of the scaffold or appliance.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Master and Servant, § 175.]

**4. SAME—NEGLIGENCE OF MASTER—BREAKING OF SCAFFOLD.**

The unexplained breaking of a plank of a platform on which a servant is working is sufficient to warrant the submission to the jury of the master's negligence under the labor law (Laws 1897, p. 467, c. 415, § 18), requiring masters to furnish safe scaffolding or other mechanical appliances.

**5. SAME—CONTRIBUTORY NEGLIGENCE.**

In an action for injuries to a servant caused by the breaking of a platform on which he was working, the question of plaintiff's contributory negligence *held*, under the evidence, properly submitted to the jury.

**6. SAME—ASSUMPTION OF RISK.**

A servant may assume that the master has made a platform on which the servant is working safe, suitable, and proper, as required by the labor law (Laws 1897, p. 467, c. 415, § 18), to stand the strain to which it is subjected, and does not, as a matter of law, assume the risk of the breaking of the platform under such strain, although he knows how the platform is constructed, where he does not know the weight which the platform will bear, and the situation is not so obvious that he is bound to know it.

Appeal from Trial Term, Kings County.

Action by James Madden against James Hughes and others. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, RICH, and MILLER, JJ.

Charles C. Nadal (William D. Stiger, on the brief), for appellants.

Stephen C. Baldwin (Frederick S. Martyn, on the brief), for respondent.

MILLER, J.　The determination of the questions involved in this case depends mainly upon whether section 18 of the labor law (chapter 415, p. 467, Laws 1897) is applicable. The "structure," in "repairing" or "altering" which the plaintiff claims to have been employed, was a scow divided into 12 pockets, 15 feet long and 14 feet deep, separated by bulkheads. The alterations or repairs consisted in placing a beam, 14 inches square, lengthwise across the

middle of each pocket; the ends resting in holes bored in the bulkheads. While boring the holes and elevating the beam into position, the men at either end of the pocket stood upon a platform consisting of two spliced spruce planks, from 2 to 3 inches thick, resting upon the slanting sides of the pocket, about 8 feet from the bottom, and fastened at either end by a rope. While the plaintiff and a fellow workman were attempting to place the beam in position, its end became jammed against the side of the pocket; and, while they were attempting to push it into its place, the platform broke about 3 feet from the splicing, precipitating the men into the bottom of the pocket, causing the injuries of which the plaintiff complains. Beams frequently got jammed in that manner, so as to require extra pressure to place them in the hole. The plaintiff had been doing this work about two months. These platforms were made by a carpenter in the manner directed by the defendants' foreman. The plaintiff testified that, when he first saw the platform that broke, it was in position; that sometimes he had helped put the planks in. The carpenter who spliced the planks testified that the plaintiff assisted in bringing them to him.

We may start with the premise that this scow was a structure, within the meaning of the labor law; but the learned counsel for the appellants, while not presenting the question in his brief, urged upon the oral argument that the placing of these beams in the scow was not a repair or alteration, within the meaning of the statute. They were to become a permanent part of the structure, and it does not seem to be necessary to indulge in any refinements of reasoning as to what constitutes an alteration, because a substantial change in the structure itself would seem to be an alteration. This is not a case of the installation of fixtures or machinery. The appellants also insist that the statute does not apply for the additional reason that the platform was furnished by the men themselves, and not by the defendants. So far as this proposition involves the effect of the plaintiff's having provided the platform himself, we need not now consider it, because the jury were warranted in finding from the plaintiff's evidence that he had had nothing to do with the construction or placing of this platform; and, accepting the evidence of the defendants' witness, to the effect that the plaintiff brought planks to him from which he constructed these platforms, it cannot be said that the mere act of carrying planks, from which some one else constructed the contrivance, constituted the "furnishing" or "erection" of the contrivance itself; and, so far as the appellants' contention relates to what was done by the plaintiff's fellow servants, the argument is based upon a misapprehension of the purpose and effect of the statute. If the statute applies only to a case where the master in fact furnishes and erects the contrivance, it has not changed the rule at common law as declared in Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017. The purpose of the statute was to impose an absolute duty on the master, which could not be delegated. Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662; Holloway v. McWilliams, 97 App. Div. 360, 89 N. Y. Supp. 1074. We are of the

opinion that, within the meaning of the statute, the plaintiff was employed in the repairing or altering of a structure, and that the platform was a mechanical contrivance caused to be furnished or erected by the defendants. These conclusions are not in conflict with Schapp v. Bloomer, 181 N. Y. 125, 73 N. E. 563, or Wingert v. Krakauer, 181 N. Y. ——, 73 N. E. 46, which were cases where the contrivance was erected to facilitate the installation of machinery or fixtures.

No point is made but that the breaking of the plank, unexplained, was sufficient to warrant the submission of the question of defendants' negligence to the jury. See Tierney v. Vunck, 97 App. Div. 1, 89 N. Y. Supp. 612. The question of plaintiff's contributory negligence was properly submitted, and it cannot be said, as matter of law, that he assumed the risk. The plank evidently broke because of the extra strain caused by the men attempting to push the beam into place, but the plaintiff had a right to assume that the master had made the platform "safe, suitable, and proper" to stand the strain to which it was frequently subjected in the hoisting of the beams. He undoubtedly knew that the platform consisted simply of the two planks spliced together, but there is no evidence that he knew how much weight they would sustain. The situation was not so obvious that he was bound to know, considering his right to rely upon the assumption that the master had discharged his duty, and the question could not, therefore, be disposed of as one of law. McLaughlin v. Eidlitz, 50 App. Div. 518, 64 N. Y. Supp. 193; Jenks v. Thompson, 179 N. Y. 20, 71 N. E. 266.

The exceptions to the charge and refusals to charge do not require further discussion. Reading the charge as a whole, it is clear that the case was fairly submitted to the jury in accordance with the conclusions already stated; and, so far as a contrary meaning is sought to be placed upon isolated sentences, it is sufficient to say that such construction is not warranted by the context, and that the jury could not have understood that any rule of law was applicable to the case not in harmony with the principles controlling us in this decision.

We cannot say that the verdict was excessive, and the judgment and order must therefore be affirmed, with costs. All concur.