WILLIAM H. CADDY, Respondent, *v.* INTERBOROUGH RAPID TRANSIT COMPANY, Appellant.

**Labor Law — liability of employer — meaning of word " structure "
— what constitutes a scaffold.**

The statutory meaning of a word or phrase must be gathered from the purpose for which the law containing it was enacted.

An employer is liable under the Labor Law (L. 1897, ch. 415, § 18) for injuries resulting from a failure to furnish an employee a safe, suitable and proper scaffold to be used in erecting, repairing, altering or painting a house, building or structure, regardless of his knowledge or negligence.

The meaning of the word " structure," as used in the statute, is not limited to structures which are *ejusdem generis* with houses and buildings, but includes a street railroad car being repaired in the shop of a railroad company, and a temporary support surrounding the car, consisting of " painters' horses " upon which were placed planks about eight feet from the floor and used by an employee at work upon the car, is a scaffold furnished to be used in repairing the structure.

An employee is entitled to recover for injuries received from the fall of a defective scaffold furnished by his employer, where he took no part in its erection and where the defects were not so obvious as to charge him with responsibility for his injuries.

*Caddy* v. *Interborough Rapid Transit Co.*, 125 App. Div. 681, affirmed.

(Argued May 20, 1909; decided June 1, 1909.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 24, 1908, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Lemuel E. Quigg* and *Charles A. Gardiner* for appellant. The car upon which plaintiff was working was not a "structure" within the meaning of the Labor Law. (*State* v. *Walsh*, 43 Minn. 444; *Gundling* v. *Chicago*, 176 Ill. 340; *Nichols* v. *State*, 127 Ind. 406; *Chegaray* v. *Mayor, etc.*, 13 N. Y. 220; *People ex rel. Satterlee* v. *Bd. of Police*, 75 N. Y. 38; *Wakefield* v. *Fargo*, 90 N. Y. 312; *Bristor* v. *Smith*, 158 N. Y. 157; *Matter of Stryker*, 158 N. Y. 526; *M. Co.* v. *P. R. R. Co.*, 114 Penn. St. 484; *Robinson* v. *M. S. Ry. Co.*, 103 App. Div. 243.) The staging upon which plaintiff was working was not a "scaffolding" within the meaning of the Labor Law. (*Schapp* v. *Bloomer*, 181 N. Y. 127; *Sutherland* v. *Ammon*, 112 App. Div. 332; *Stokes* v. *Ins. Co.*, 118 App. Div. 77; *Williams* v. *First Nat. Bank*, 118 App. Div. 555; *Hutton* v. *H. Co.*, 139 Fed. Rep. 734; *Welk* v. *Jacobson*, 98 App. Div. 247.)

*Charles M. Davenport* and *Harry E. Lewis* for respondent. The car upon which the plaintiff was working was a "structure" within the meaning of the Labor Law. (*Butler* v. *Townsend*, 126 App. Div. 105; *Kimmer* v. *Weber*, 151 N. Y. 417; *Chaffee* v. *E. R. R. Co.*, 68 App. Div. 578;

*Wingert* v. *Krakauer*, 76 App. Div. 34; *Stewart* v. *Ferguson*, 34 App. Div. 515; 44 App. Div. 58; 52 App. Div. 317; 164 N. Y. 553; *Kuss* v. *Freid*, 32 Misc. Rep. 628; *Walters* v. *Fuller Co.*, 74 App. Div. 388; *Tracey* v. *Williams*, 111 N. Y. Supp. 114; *Sivensen* v. *Jenks*, 92 N. Y. Supp. 382; *Holloway* v. *Mc Williams*, 89 N. Y. Supp. 1074.) The place where plaintiff was working was a "scaffolding" within the meaning of the Labor Law. (*Sutherland* v. *Ammann*, 112 App. Div. 332; *Stokes* v. *N. Y. L. Ins. Co.*, 118 App. Div. 77; *Williams* v. *F. Nat. Bank*, 118 App. Div. 555; *Swenson* v. *W. B. Mfg. Co.*, 92 N. Y. Supp. 64; *McLaughlin* v. *Eidlitz*, 64 N. Y. Supp. 193; *Chiavarcole* v. *U. B. & P. Co.*, 115 N. Y. Supp. 327; *Anderson* v. *M. Bros.*, 108 N. Y. Supp. 61; *Tracy* v. *Williams*, 111 N. Y. Supp. 114; *Warren* v. *Post*, 112 N. Y. Supp. 960; *Croce* v. *Buckley*, 100 N. Y. Supp. 898.)

WERNER, J.   The plaintiff was injured while engaged in repairing one of defendant's cars in its shop in the borough of Manhattan in the city of New York.   The car was forty-seven feet long, eight feet six inches wide and sixteen feet high.   It was "jacked up" about six feet above the floor so that its height over all was about twenty-two feet.   Around the car there had been placed a staging consisting of "painters' horses" constructed like ladders with rungs about twelve inches apart.   Upon these "horses" were placed planks about eight feet above the floor.   The plaintiff was standing at work upon a plank which formed a part of the staging on the south side of the car when it broke and precipitated him to the floor, causing the injuries for which he seeks to recover in this action.   At the Trial Term the complaint was dismissed.   At the Appellate Division the judgment entered upon that decision was reversed and a new trial granted.   Upon defendant's appeal to this court the two principal questions presented are, whether the staging upon which the plaintiff was standing when it gave way was a scaffold, and whether the car upon which he was at work was a structure

within the purview of sections 18 and 19 of the statute commonly known as the Labor Law (L. 1897, ch. 415).

Before the enactment of that statute it had been held that a staging or scaffolding erected for workmen was not a place in which to do their work, but an appliance or instrumentality by means of which the work was to be done, and the logical corollary of that conclusion was that when the master had exercised reasonable care in the selection of competent fellow-workmen and suitable materials for the proper construction of the appliance, he was not liable for injuries sustained by one workman through the fault or negligence of another. (*Butler* v. *Townsend*, 126 N. Y. 105; *Kimmer* v. *Weber*, 151 N. Y. 417.) By the statute of 1897 the legislature established a different rule in specified instances where the employer assumes, or is charged with, the duty of furnishing scaffolding for the use of his employees. The statute provides that "A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged" (section 18), and the following section adds that: "All swinging and stationary scaffolding shall be so constructed as to bear four times the maximum weight required to be dependent therefrom or placed thereon, when in use  *  *  *," (section 19).

In considering this statute in the case of *Stewart* v. *Ferguson* (164 N. Y. 553, 556) this court held that section 18 lays upon the master a positive prohibition, from the violation of which neither his own ignorance nor the carelessness of his servants will shield him. In that case the statute as it now stands was compared with the provisions of an earlier one. (L. 1885, ch. 314, sec. 1), under which the master was charged with responsibility for "knowingly and negligently" furnishing

defective scaffolding, etc., and the decision was predicated upon the obvious purpose of the legislature to impose upon the employer the affirmative and imperative duty to furnish to his employees stagings and scaffoldings for certain purposes that are safe, suitable and proper, regardless of the employer's knowledge or negligence in the matter. This is absolute and unequivocal. Whenever a scaffold is furnished or caused to be furnished by an employer to be used in erecting, repairing, altering or painting a house, building or structure, it must be safe, suitable and proper, or the employer is liable.

Thus far there is no difficulty in ascertaining the legislative purpose; beyond it there is doubt and uncertainty. And the trouble arises from the inherent impossibility of defining in unequivocal phrase the physical objects mentioned in the statute. What is a scaffold? What is a structure? These are the vexed questions which the courts are constantly being called upon to answer in cases involving an infinite variety of practical conditions. Experience has shown that they are questions which cannot be solved by academic discussion, and that even when they are applied to concrete facts they often lead judicial minds to radically divergent conclusions. In the case at bar the question is whether the car above described is a structure within the meaning of the law. Counsel for the defendant, in a very lucid and forceful argument, invokes the rule of *ejusdem generis*. His contention reduced to its shortest statement is that the general word "structure" must be limited by and comprehended within the specific terms "house" and "building," and when thus construed it necessarily excludes all structures which do not fall within the generic description of houses and buildings. To this argument counsel for the plaintiff replies that the words "house" and "building" are in themselves so general and comprehensive that the word "structure" cannot possibly broaden or amplify their meaning, and need not necessarily be associated therewith; that the term "structure" was used, not to make more definite the description of "house" and

"building," but to enlarge to the fullest extent the list of artificial physical objects to which the reason of the statute can be applied.   The question is not free from doubt, but we incline to the view that the rule of *ejusdem generis* does not apply.   The term "house" as used in common speech embraces every form of structure designed for human habitation, but in a legal sense it is even more comprehensive, as is shown by the statutes relating to burglary, arson and other crimes which involve acts committed in or upon buildings or structures. A building is a structure which, of course, includes every form of artificial house; but also many structures not included in that more restricted term.   And so the word "structure" in its broadest sense includes any production or piece of work artificially built up or composed of parts joined together in some definite manner, and its extended legal signification can easily be gathered from the great variety of subjects to which it is applied in creating and penalizing what are known as statutory misdemeanors.   In cases like this, lexicographers' definitions are useful as guide posts, but they do not take us to our destination.   The statutory meaning of a word or phrase must be gathered from the purpose for which the law containing it was enacted.   Under the common law it was often difficult to fix the legal responsibility for accidents arising from defective scaffoldings and stagings.   In many cases where the master should have been held liable, he escaped under cover of the fellow-servant doctrine; and in many more he was mulcted in damages for the negligence of others in details which he could not control.   This was the evil sought to be remedied by a statute designed to charge the master with a more rigid and personal responsibility for the erection of scaffoldings and stagings, and to assure the servant, who takes no part in their construction, of greater safety in their use.   A scaffold is no more dangerous when used in erecting, repairing, altering or painting a house or building, than when used for the same purpose upon any structure where the same kind of a scaffold is necessary.   The dangers to the employee are the same, and the evils of the common-law rule sought to be remedied by the

statute are alike in each case.   It is to be observed, moreover, that the word "structure" is not joined to "building" and "house" by the adjective "other," but by a simple "or," so that the language is "house, building or structure." The word "or" here takes the place of a comma, and this grammatical construction indicates that the word "structure" has as distinct and separate a meaning as "building" has from "house."

This broad and practical view of the statute was taken by the Appellate Division in the fourth department in *Chaffee* v. *Union Dry Dock Co.* (68 App. Div. 578), where it was held that a ship was a structure; by the second department in *Flannigan* v. *Ryan* (89 App. Div. 624), where one of the piers of the Williamsburg bridge was regarded as within the same category; and in *Madden* v. *Hughes* (104 App. Div. 101), where a scow one hundred feet long, thirty feet wide and fourteen feet deep was thought to fall within the statute.   These cases differ just enough in circumstance to indicate the limitless variety of objects which may be described as structures, and the comparatively narrow field within which the statute would be operative if it were confined to buildings and houses.   The more carefully this statute is studied the more apparent it becomes that it was clearly designed to cover many structures which are not *ejusdem generis* with houses and buildings, and that no hard and fast legal definitions can be framed of the many things which may be comprehended by its provisions. Within this broad construction of the statute we think the car upon which the plaintiff was at work when injured was a structure.   If it had been built of the same shape and dimensions upon wooden posts or stone piers sunk into the ground, and had been intended for a dwelling or a workshop, it would clearly have been a structure.   The fact that it happens to have been a thing called a railroad car when in use does not exclude it from the category of structures when it is temporarily necessary to use scaffolding thereon in the process of erecting, repairing, altering or painting.

When we undertake to define a scaffold or scaffolding we meet even greater difficulties.   It is like reasoning in a circle

to attempt to define "scaffolding" and "structures" in their relation to each other. On the one hand it may be argued that anything large enough to require the use of a scaffold in the work of erection or repair may very properly be dignified by the title of "structure;" and the process need only be reversed to prove that a staging necessary to erect or repair a "structure" must certainly be of such dimensions and character as to constitute a scaffold. Upon this branch of the case we can add practically nothing to the foregoing discussion. The same reasoning applies. The reports of decisions in the Appellate Division are full of cases in which the question has arisen in many forms, but they are of no use as authorities except where the facts are identical or so similar as to be controlling. The following cases disclose the wide range of things which the Appellate Division have held to be scaffolds within the statute : *Madden* v. *Hughes* (104 App. Div. 101), platform consisting of planks between divisions of hold of a scow; *Chaffee* v. *Union Dry Dock Co.* (*supra*), timbers laid across hold of vessel and resting on chains; *Swenson* v. *Wilson & Baillie Mfg. Co.* (102 App. Div. 477), platform used only for materials made of planks laid across girders in uncompleted building; *McLaughlin* v. *Eidlitz* (50 id. 518), planks laid across barrels which were placed on each side of a cable; *Anderson* v. *Milliken Bros.* (123 id. 614), unfastened planks placed upon braces which formed part of a grain bin then in course of construction; *Tracey* v. *Williams* (127 id. 126) planks laid on horses placed one above the other; *Groce* v. *Buckley* (115 id. 354), the top of an elevator upon which workmen were standing under directions from master. We cite these cases not for the purpose of indorsing the conclusions reached in them, but to illustrate the variety and difficulty of the subject.

When we turn to the lexicographers we find nothing much more definite. We all accept the definition that a scaffold is "a temporary structure of timber, boards, etc., for various purposes, as for supporting workmen and materials in building." (Webster's International Dict.) But when that is

admitted we may still differ as to the height and other dimensions which mark the difference between a scaffold and a platform or staging.    In *Schapp* v. *Bloomer* (181 N. Y. 125) this court held that a staging from four to six feet high, used for the purpose of placing shafting and fixtures, and supported by large rolls of paper and brackets nailed to posts which upheld the roof, was not a scaffold within the meaning of the statute.    That case clearly discloses the impossibility of fixing an arbitrary point at which a thing ceases to be a mere platform and becomes a scaffold.    There Judge HAIGHT said of the statute that " what the legislature evidently had in mind was scaffolding on buildings or structures where its use was obviously dangerous to life and limb of an employee thereon in case of a fall." (p. 128.)    That is true, but it is just as impossible to exactly fix the point at which a thing may become obviously dangerous to life and limb in case of a fall as it is to say with dogmatic certainty that a thing of one height, length and breadth is a structure, while a thing of the same character but of lesser dimensions does not fall within that definition.    The inherent difficulties of the subject are such as to finally compel us to work out each case upon its own peculiar facts in the light of the manifest purpose of the legislature to secure greater protection to the employee, and to impose upon the employer directly a personal obligation which under the common law he had the right to delegate to competent employees.    Upon the facts disclosed by the record we think the conclusion that the car upon which the plaintiff was employed was a structure, justifies the further conclusion that the temporary support which surrounded it was a scaffold. Having reached this decision the other facts of record present no obstacle to plaintiff's recovery, for the evidence was such as to support a finding that the scaffold was furnished by the defendant; that the plaintiff took no part in its erection, and that the defects in the plank which broke were not so obvious as to charge the plaintiff with responsibility for his own injuries.    This disposition of the case renders it unnecessary to discuss the other questions argued orally and in the briefs.

The order of the Appellate Division should, therefore, be affirmed, and judgment absolute is ordered for the plaintiff upon defendant's stipulation, with costs to the plaintiff in all courts.

GRAY, VANN, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur; CULLEN, Ch. J., absent.

Order affirmed, etc.