### HAMMOND v. UNION BAG & PAPER CO.

(Supreme Court, Appellate Division, Third Department. June 27, 1912.)

1. MASTER AND SERVANT (§ 233*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Where injury resulted to a skilled carpenter, accustomed to the erection of scaffolding, from the improper manner in which he assembled the scaffolding after taking it down, and not from any defect in the scaffolding itself, his employer was not liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 681, 684–686, 701–742; Dec. Dig. § 233.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MASTER AND SERVANT (§ 267*)—INJURY TO SERVANT—EVIDENCE.

    In an employé's action for injuries from the falling of a scaffolding, defendant's evidence that the scaffolding had sustained other heavy work should have been admitted on the question of whether it was suitable for the purpose used.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 909, 911; Dec. Dig. § 267.*]

    Houghton and Betts, JJ., dissenting.

Appeal from Trial Term, Washington County.

Action by Clarence Hammond against the Union Bag & Paper Company. From a judgment for plaintiff and denial of a new trial, defendant appeals. Reversed, and new trial granted.

See, also, 143 App. Div. 971, 127 N. Y. Supp. 1123; 134 N. Y. Supp. 1134.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Edward M. Angell, of Glens Falls, for appellant.

Henry W. Williams, of Glens Falls, for respondent.

JOHN M. KELLOGG, J. This case was before the court in 136 App. Div. 100, 120 N. Y. Supp. 652, when we reversed a judgment in favor of the plaintiff upon the ground that he assembled the adjustible scaffold, and that the fall did not come from any defects in the jacks, but rather from the manner in which they were assembled and fastened by the plaintiff. Recovery was then sought at common law. The case was retried, and plaintiff's recovery was reversed by this court without opinion; the court evidently considering that the situation had not changed. Upon the second trial the plaintiff relied upon the common-law liability and the Employer's Liability Act. Upon this trial he relies upon section 18 of the Labor Law. It appears that he was directed to use the scaffold which was then erected for use. He and Brown of their own motion took it apart and reassembled it for a part of their work and later took it apart and reassembled it.

[1] He swore upon the first trial that, before they took the scaffold apart the first time, the legs stood about four inches out of the perpendicular, and that they assembled it with substantially the same slope in the legs. Upon this trial it appears from the plaintiff's expert that, if the legs stood at a slope of 4 inches only, the strain upon the clamp at the time of the fall would be 100 pounds; but, if the legs were 15 inches out of the perpendicular, the strain upon the clamp would be 400 pounds, and if the factor of safety was called 10 that weight would exceed the limit which the scaffold should be called upon to bear. He tested the clamp and found that it pulled out on a weight of 1,350 pounds. The plaintiff now testifies that the slope of the legs was 15 or 18 inches out of the perpendicular. If we assume that it was 4 inches only, as he testified upon the former trial, then no negligence could be imputed to the defendant, for the clamp was able to sustain all the pressure put upon it if properly

screwed up, and the conclusion irresistibly follows that the cause of the fall was the improper manner in which the jacks were adjusted. The change in the plaintiff's testimony is vital, and no reasonable explanation appears for it except the necessities of the case. If the defendant had desired to know whether this platform was capable of sustaining the proposed strain, or at what angle the legs should stand, it would naturally have called upon the plaintiff, its skilled carpenter, for information upon that subject. Plaintiff's evidence shows that he is familiar with the erection of platforms and scaffolding and knows that the slope given to the legs out of the perpendicular has a direct bearing upon the load which the scaffold may bear. The defendant furnished a scaffold complete in itself; the plaintiff took it apart and readjusted it twice in his own way and without instructions. Any ordinary carpenter would know how to assemble the scaffold and that its suitability depended upon the slope given to the legs and the manner in which the clamps were screwed up. The scaffold as it was constructed at the time it fell was not furnished by the defendant in the condition in which it was. Its condition was due to the manner in which the plaintiff assembled it. Nothing about the scaffold broke. The opinion on the former trial applies to the situation here, which has not materially changed. Section 19 of the Labor Law provides:

"All swinging and stationary scaffolding shall be so constructed as to bear four times the maximum weight required to be dependent therefrom or placed thereon, when in use, and not more than ten men shall be allowed on any swinging scaffolding at any time."

It would seem, without particular examination, that this section would indicate the factor of safety required in this scaffold. But we need not consider that question. The evidence shows that the plaintiff met his injury, not from a defective scaffold furnished by the defendant, but from the improper manner in which he assembled it after he had taken it down, and his injury came from the improper use of the scaffold. He was not told to take it down; if he did not know how to assemble it, he should have called for the information or used it as he found it. But he evidently did know, and simply made a mistake in not giving the proper attention to the manner in which the clamps were secured. The judgment is against the evidence.

It appears that the day before in using the scaffold after the plaintiff had assembled it, it sustained a heavier burden than was put upon it at the time of the fall.

[2] It was error not to permit the defendant to show what other heavy work this scaffold had sustained as bearing upon the question whether it were suitable and appropriate for the purposes for which it was being used. It was urged that the header, after being subjected to much strain, might not be as strong as it formerly was. The evidence indicated that there were many pieces in the control of the carpenter which were from time to time used as headers. It was also indicated that this header had had but little use.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except HOUGHTON, J., dissenting in opinion in which BETTS, J., concurs.

HOUGHTON, J. (dissenting). I think the facts proved upon the trial justified the verdict in favor of the plaintiff, and that it should not be disturbed. I also think there were no errors committed upon the trial which require a reversal of the judgment.

The scaffolding upon which the plaintiff was directed by the defendant to work clearly came within the provisions of section 18 of the Labor Law (Consol. Laws 1909, c. 31). Great height is not a necessary element of a scaffold. The mill was under construction, and necessary crossbeams were being put in place. The defendant knew that heavy work must be done upon the scaffold and knew, of course, the peculiar manner in which the legs of the jacks, upon which the scaffolding planks must be laid, were held in place. There is no dispute that the scaffolding collapsed because the clamp pulled off the header, thus taking away the support of the legs.

If the mere fact that the scaffolding broke is not alone enough to establish prima facie negligence on the part of the defendant, the jury were amply justified in saying that a scaffolding supported by adjustable jacks, the legs of which were held in place only by the teeth of clamps pressed into yielding wood, was wholly inadequate and unsuitable for the support of material and men engaged in heavy work.

There were only two ways therefore by which the defendant could avoid compensating the plaintiff for the injuries which he received, one by showing that the jacks could be adjusted in a way to make them safe for heavy work and that the plaintiff or his coworker adjusted them in a careless and improper manner, and the other that the plaintiff had reason to know that the contrivance was unsafe and assumed the risk of its collapsing.

Under the facts proven, both of these defenses were questions for the jury and not for the court to determine. I think the jury passed upon them properly; but, whether they did or not, there is no such preponderance of evidence in favor of the defendant as authorizes this court to interfere with the verdict which they gave.

Little importance, it seems to me, should be attached to the fact that the plaintiff estimated differently in his testimony upon the various trials the angle at which the legs were adjusted on the occasion of the accident. Even one accustomed to measure distances by the eye might well be mistaken as to the length of the base of a triangle and on reflection might make it more or less.

The prevailing opinion lays stress upon the fact that the legs were adjusted out of perpendicular 15 to 18 inches. The witness Cooper, who was called by the defendant because he had had much experience with these jacks, which were set up in the courtroom while the trial was in progress, to illustrate the situation to the jury, and were claimed to be adjusted in substantially the same position as when they collapsed, testified:

"We would set them out a little more. I put them in a slanting position when they were used by me, because you have to put them the same as sawhorses so they will not rock. You put them the same as you would any horses. I put them out a little more distance maybe than you see them here. We put them a little more than that. The more you get them out the stiffer it is."

It appears, therefore, that the plaintiff set the legs not at too great a slant, but substantially as they ought to have been set. Even if the plaintiff on the first trial said that they might have been only four inches out of perpendicular, the defendant cannot avail itself of that bit of evidence to say that when he put them out 15 or 18 inches from perpendicular he put them out too much, because they ought to have been out that distance and they were not effective unless they were so placed. It is perfectly apparent that the legs must be at a slant and that they could not be perpendicular, because if they were the slightest movement of a workman would cause them to fall. Of course, if the legs were perpendicular, or substantially so, there would be less strain on the clamp; but it was impractical to use them in that position, and the purpose of the clamp was to hold the legs in a slanting position.

Nor was the plaintiff at fault because he took the jacks apart and moved them to the place where they were to be used and set them up again. They were kept around the mill because they were a handy contrivance, light, and could be easily taken apart and moved. They could be set up to make a long scaffolding or a short one, and it manifestly was the ordinary thing to take them apart and set them up again when they were to be used in a different place from where they chanced to stand, instead of shoving them bodily to the new position.

While the plaintiff was a carpenter, he was not accustomed to use these jacks. They were painters' jacks, and there is no contradiction of his testimony that he never used them but once prior to the time he was engaged in the work at which he was injured. To be sure, because of his trade he ought to have more knowledge with respect to scaffolding and horses and jacks in general than a man engaged in some other occupation. He testified, and his coworker also testified, that the clamps were screwed up tight. The jury heard both of them testify and saw their demeanor. After the accident the header upon which the clamps were screwed showed that the teeth had pulled off, and not that they had not been set in the wood, but that they had once been set in and pulled out. The situation itself shows that they must have been set in when the scaffolding was erected because work, and heavy work, was done on them for some hours immediately after they were set up. If the clamps had not been screwed up, the contrivance would have collapsed immediately on weight being put upon it. It finally gave way from the jar of working and placing of heavy material upon it, as it well might be expected to do. Under the facts proven, the jury was entirely justified in saying that neither the plaintiff nor his coworker was negligent in erecting the scaffolding or adjusting the clamps.

The jury was also justified in saying that there was no risk which the plaintiff knew of and assumed in using the scaffolding which the defendant told him to use and which it furnished him for the purpose of using.

The two defenses which might exonerate the defendant from liability were repudiated by the verdict of the jury, and I think properly so.

It only remains to be considered whether there was any error in the exclusion of evidence which calls for a reversal of the judgment. As an original proposition I should have some hesitancy in saying that it was not competent for the defendant to prove that it had reason to believe that the scaffolding which fell and the jacks which supported it were proper and safe because they had been used for heavier loads on previous occasions and had sustained the weight and had not collapsed. It would seem, however, that under the Labor Law a master is not exonerated by showing that he had reason to believe that a scaffolding was safe, that it was constructed of material that appeared to be safe, or that it was the kind ordinarily used. In other words, as I read the decisions interpreting section 18 of the Labor Law, they are to the effect that the absolute duty is imposed upon the master to furnish a scaffolding which will not break, and that if it does break he is liable to his servant for the consequences irrespective of the care with which he, the master, constructed it or of the supposed proper material which he selected and with which it was made. Formerly section 18 of the Labor Law (section 1, c. 314, Laws 1885) provided that the master should not "knowingly or negligently" furnish an unsafe scaffolding; but those words are omitted from the present law. This change in the law is commented upon in Caddy v. Interborough Rapid Transit Co., 195 N. Y. 415, 419, 88 N. E. 747, 748 (30 L. R. A. [N. S.] 30), where it was said:

"It was the obvious purpose of the Legislature (in amending the law) to impose upon the employer the affirmative and imperative duty to furnish its employés staging and scaffolding for certain purposes that are safe, suitable, and proper, regardless of the employer's knowledge or negligence in the matter. This is absolute and unequivocal. Whenever a scaffold is furnished, or caused to be furnished, by an employer to be used in erecting, repairing, altering, or painting a house, building, or structure, it must be safe, suitable, and proper or the employer is liable."

In Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662, which was the first case in which the difference in the statutes was pointed out, it was held that where a scaffold provided by the master for a servant's use falls, and no other cause of the fall is ascertained except as inferred from the fall itself, the fall is prima facie evidence of the negligence of the master. In Gombert v. McKay, 201 N. Y. 27, 94 N. E. 186, this provision of the Labor Law was under consideration, and the court says:

"The statute broadens in a substantial and important degree the liability of the class of employers designated by it. It, in terms, absolutely forbids those employers to furnish or operate, or cause to be furnished or operated, any apparatus therein mentioned of the character and quality described by it. It, in its effect, provides that any employer who either personally or by another furnished for the performance of any named labor a forbidden article shall be responsible therefor. The duty of the employer created by it is personal, incapable of delegation, and unaffected by caution and discrimination in selecting employés for their prudence and competency."

This latter case, although impliedly holding that where the scaffolding fell the employer had no defense based upon the ground that he used good material or employed a competent and capable servant

to erect it, explicitly held only that the employer still had the common-law defense of negligence on the part of the servant who erected it and used it, and also the defense that the servant took the risk of using what he had himself erected.

The Appellate Division of the Fourth Department, in Smith v. Variety Iron & Steel Works Co., 147 App. Div. 242, 131 N. Y. Supp. 1033, labored with the question, and by a divided court held that it was no defense for a master to prove that the defect which caused the scaffold to fall was hidden and not discoverable by any reasonable inspection.

The effect of these decisions seems to be that, where a master furnishes a scaffold, he becomes an insurer that it will not break, and he cannot escape liability when it does break by showing that it was erected in the most approved manner by competent men, with material which appeared to be suitable, sound, and proper.

If this be the law, then it was wholly immaterial for the defendant to prove that the jacks in question had formerly stood a greater strain than they were called upon to bear when the plaintiff was injured, or that they had been used repeatedly in various kinds of work prior to the occasion when they collapsed, for none of these things would relieve it from liability for their breaking. The only possible ground upon which the evidence could have been material was that it was a safe and proper contrivance when the clamps were properly screwed into the header, and that therefore the plaintiff must have failed to properly screw them in on the occasion in question, else they would not have pulled out.

Assuming that the evidence was proper for this purpose, the very witness by which the defendant sought to prove these facts testifies that the header into which the clamps must be screwed was often changed.   He says.

"I do not think we ever used the same header twice."

The test which this witness made after the accident, and which the learned trial court refused to let him testify concerning, and of which the defendant complains, was not made with the same header that was in use when the accident occurred.   On examination by the court he says:

"It was the same size, but I do not think the same one.   It was not the same timber."

Thereupon the court excluded his testimony as to the weight which he put upon the jacks and which they held up under such circumstances.   Of course, timber of the same variety varies in hardness and textile strength.   While these headers were all of spruce two-inch plank, one plank may have been soft and the other may have been hard; the one pull out easily and the other resist force.   The same is true with respect to the other evidence offered by this witness and which it is claimed to have been error to exclude.   In none of the questions put to the witness which the court excluded is it claimed or proven that the same header was in the jacks that was in at the time

the accident occurred. The court therefore properly excluded evidence of prior use and prior screwing of clamps into the header because the conditions ·were not the same and the header was not the same.

This same vice with respect to the evidence exists even if the defendant was not obliged at all hazards to furnish a scaffolding which would not break, and if it was a defense to it to show that it appeared to be suitable because it had been used on previous occasions for various kinds of work with heavier loads and did not break. Even if that were a defense under the provisions of the Labor Law, which as we have pointed out it does not seem to be, the conditions must have been the same, which confessedly they were not.

On all the questions, therefore, I think the judgment and order should not be reversed, but should be affirmed.

BETTS, J., concurs.