(152 App. Div. 606.)

### HOLSAPPLE v. INTERNATIONAL PAPER CO.

(Supreme Court, Appellate Division, Third Department. September 27, 1912.)

MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—DEFECT IN STAGING— "SCAFFOLD"—INSTRUCTIONS.

  Plaintiff, having been instructed to paint a circular steel tube, requested a scaffold, and was informed by the foreman to use a plank lying nearby. Plaintiff put the plank between certain brick piers, and, while using it, it broke because of a knot defect, and plaintiff fell and was injured. *Held,* that the staging constituted a "scaffold" within Labor Law (Consol. Laws 1909, c. 31) § 18, requiring the master to provide scaffolding for painting operations, etc., and it was error to charge that defendant was not liable for furnishing an unsafe scaffold, unless the location was obviously dangerous, and in refusing to charge that it was defendant's duty to furnish a safe scaffold for plaintiff to work on.

  [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*

  For other definitions, see Words and Phrases, vol. 8, p. 7795.]

  Smith, P. J., and Houghton, J., dissenting.

---

Appeal from Trial Term, Saratoga County.

Action by Elbert F. Holsapple against the International Paper Company. From a judgment for defendant, and from an order denying plaintiff's motion to set aside the verdict and for a new trial, he appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Butler & Kilmer, of Saratoga Springs, for appellant.

Rockwood, McKnight & McKelvey, of Saratoga Springs, for respondent.

LYON, J. The plaintiff, by occupation a painter, and as such an employé of the defendant at its mill in the town of Corinth, Saratoga county, for two years, was injured in October, 1910, while engaged in painting a circular steel tube or pen stock, which passed through the basement of defendant's mill, and was used to convey water to the wheels which furnished power to operate the mill. The tube was 10 feet in diameter, and rested in brick piers about 10 feet apart, the sides of which extended around the lower portion of the tube, terminating in flat surfaces about 15 or 20 inches square, about 4½ feet from the floor.

Upon the morning of the day of the occurrence complained of, the plaintiff, with other painters and workmen, was engaged in scraping the rust from the steel tube preparatory to painting it, when a foreman of the defendant directed plaintiff to discontinue that work, saying to him, "You take your bucket and go to painting here," pointing out a portion of the east end of the tube, which was comparatively well lighted through windows in the wall. Plaintiff thereupon got his bucket, and said to the foreman, "You will have to have a scaffold there over these two or three bents;" and the foreman, pointing to a plank which extended from the wall to the top of the first pier, said to the plaintiff, "You can take that plank and put it on these piers." The foreman then left. There was no other plank within view, but there was a pile of lumber on the premises in which were plank of various lengths, as well as a pile of special plank used for staging, kept in the lumber shed near the planing mill. The plaintiff testified that he looked at the plank pointed out by the foreman, but did not look it over, and took it, and, placing one end upon the first pier and the other end upon the second pier, stood upon it and painted the portion of the tube between the two piers. The plaintiff then moved the plank along so that one end rested upon the second pier and the other end upon the third pier, and was walking out to paint the portion of the pipe between those piers, when the plank broke and the plaintiff fell to the basement bottom, which was of cement and covered to the depth of from 12 to 15 inches by water and wet beaten pulp, in which were broken brick and pieces of concrete. An examination of the plank after the accident disclosed a knot at the point of breakage, which plaintiff testifies he did not see, which was not less than four or five inches long and about two inches wide, pass-

ing through the plank, but not showing as distinctly on one side as on the other. As a result of the fall, plaintiff sustained an oblique fracture of both bones of the lower left leg, just above the ankle joint, disabling him for several months, and resulting in a shortening of the leg and permanent restriction of motion of the ankle.

Preceding the commencment of the action, plaintiff served upon defendant a notice of injury which was properly excluded by the court as insufficient to constitute the notice required by the Employers' Liability Act (Consol. Laws 1909, c. 31, §§ 200–204). Logerto v. Central Building Co., 198 N. Y. 390, 91 N. E. 782; Lewis v. Gehlen, 136 App. Div. 855, 122 N. Y. Supp. 89.

The complaint contained two causes of action—one under the Labor Law (Consol. Laws 1909, c. 31), and the other under the common law. The defendant offered no evidence. The jury rendered a verdict of no cause of action, upon which the judgment appealed from was entered.

There were no exceptions taken by plaintiff to the admission or rejection of evidence which require consideration, but the plaintiff directs our attention to exceptions taken to the charge and to refusals to charge as constituting reversible error. The court submitted two questions to the jury: First, was this scaffold obviously dangerous to an employé in the case of a fall at this place and under these conditions; and, second, was the plaintiff guilty of contributory negligence? Regarding the first proposition, the court charged the jury:

"A person employing another to perform labor in painting a structure shall not furnish scaffolding which is unsafe, unsuitable, or improper. * * *, That rule applies only to scaffolding where its use is obviously dangerous to life and limb of the employé working thereon in case of a fall. The first question is, Was this scaffolding obviously dangerous to an employé in the case of a fall at this place and under these conditions? * * * If the condition was obviously dangerous for a fall, then it was the duty of the master to furnish a safe scaffold, and, if it was not safe, the master is liable. Was it obviously dangerous? * * * That question is left to you under your oaths. * * * The burden of proof is upon the plaintiff to satisfy you by a fair preponderance of proof that that is so."

Plaintiff excepted to that part of the charge in which the court said that the law only applied to scaffolds dangerous to employés working upon them. Plaintiff requested the court to charge that it was the duty of the defendant to furnish a safe scaffold for the plaintiff to work upon when painting, which was refused, and to which refusal the plaintiff excepted. The court thus, in effect, instructed the jury that the defendant was not liable for furnishing an unsafe scaffold with which to paint a structure, unless the jury should find that the location was obviously dangerous. The ruling was doubtless based upon the decision in Schapp v. Bloomer, 181 N. Y. 125, 73 N. E. 563. But in that case it was held that the staging was not a scaffold within the contemplation of section 18 of the Labor Law. In the case at bar, however, the staging was a scaffold, and the plaintiff, being engaged in painting a structure, was within the express protection of that statute, and the excep-

tions of the plaintiff to the portion of the charge above referred to, as well as to the refusal to charge, were well taken. Caddy v. Interborough Rapid Transit Co., 195 N. Y. 415, 88 N. E. 747, 30 L. R. A. (N. S.) 30; Gombert v. McKay, 201 N. Y. 27, 94 N. E. 186.

While the jury may have found that the plaintiff was guilty of contributory negligence in not having inspected the plank before putting it to use, yet it is uncertain upon which of the two questions submitted to them they based their verdict.

The judgment and order appealed from must therefore be reversed, with costs to the appellant to abide the event. All concur, except SMITH, P. J., and HOUGHTON, J., dissenting.