## FORD MOTOR CO. v. DONALDSON.

(Circuit Court of Appeals, Second Circuit. November 10, 1914.)

### No. 82.

1. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—DEFECTIVE SCAFFOLDING—LABOR LAW.

Labor Law N. Y. (Consol. Laws, c. 31) § 18, making an employer liable for injuries to a servant resulting from a defective scaffold, is applicable, though the injured workman built or helped to build the scaffold.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

2. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—DEFECTIVE SCAFFOLD—"PAINTING."

Where plaintiff was employed to paint defendant's showroom, and was injured by the breaking of a defective scaffold as he was washing the kalsomine from the walls preliminary to applying the paint, he was engaged in "painting," within Labor Law N. Y. § 18, providing that a person employing or directing another to paint a house shall not furnish or erect a defective scaffold, etc.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

3. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—DEFECTIVE SCAFFOLD—LABOR LAW—"HOUSE, BUILDING, OR STRUCTURE."

Where a servant was employed to paint the walls of defendant's showroom, and while washing the kalsomine from the walls was injured by the breaking of a defective scaffold, he was engaged in painting a "house, building, or other structure," within Labor Law N. Y. § 18, making an employer liable for injuries to a servant by the breaking of a scaffold furnished for painting a house, building, or structure.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

4. TRIAL (§ 260*)—INSTRUCTIONS—REQUEST TO CHARGE—INSTRUCTIONS GIVEN.

Where the court charged that a servant could not recover for injuries under Labor Law N. Y. § 18, from the breaking of a defective scaffold used in painting defendant's showroom, if the servant knew, or in the exercise of ordinary care should have known, that the plank that broke was unsafe, in which case he would be guilty of negligence in using it, etc., such instruction constituted a full submission of the issue of contributory negligence, and covered requests to charge that it was the servant's duty to use reasonable care to examine the planks before using them in the scaffold, and if he was careless in the slightest degree, which con-

─────────────

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tributed to the accident, either in using a defective plank, or in going thereon, he could not recover.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

In Error to the District Court of the United States for the Eastern District of New York.

This cause comes here to review a judgment of the District Court, Eastern District of New York, entered on the verdict of a jury in favor of defendant in error, who was plaintiff below. The action was brought by an employé to recover for personal injuries predicated on the alleged negligence of the employer.

L. E. Ginn, of New York City, for plaintiff in error.

G. F. Hickey, of New York City, for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. The walls and ceilings of defendant's showroom were to be painted; plaintiff and another employé were ordered to do the work. It was necessary as a preliminary to this work to wash or otherwise remove kalsomine from the ceiling. In order to reach the ceiling a platform was constructed by making two horses about 10 feet high and 5 feet long, on which planks were placed so as to obtain a platform for the men to stand on. This work was done by plaintiff and the other painter, Hughes. Not finding planks on the premises which they thought suitable, Hughes with the consent of the superintendent got some from his brother-in-law. At least five of the planks were put on the horses to make the platform; the horses were about 9 or 10 feet apart, and the planks extended about 10 feet from each end beyond the horses. Plaintiff and Hughes worked on the platform washing the kalsomine off the walls and ceiling for a few hours, moving the platform from place to place as their work required, and were so engaged when a piece of one of the outside planks broke out under one of plaintiff's feet, causing him to fall to the floor. After the accident it was discovered that the plank had a knot and weather check in it, and had split lengthwise from the end along the check and then crosswise to the outside.

The main question in this case is the construction to be given to section 18 of the Labor Law of the state of New York, which reads:

"18. Scaffolding for the Use of Employés.—A person employing or directing another to perform labor of any kind in the erection, repairing, altering or painting of a house, building or structure shall not furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders or other mechanical contrivances which are unsafe, unsuitable or improper, and which are not so constructed, placed and operated as to give proper protection to the life and limb of a person so employed or engaged."

Defendant contends that the facts do not bring the case within the purview of that law.

[1] We find nothing in the statute which supports the proposition contended for and supported by several Appellate Division decisions

that the section does not apply when the injured party himself builds or helps build the scaffold. On the contrary, it seems to be the object of the act to make the master have scaffolds built by men competent to build them properly, not by the workman who is to use them—quite frequently not himself an experienced carpenter. We have construed this statute in MacDonald v. Manns, 177 Fed. 203, 101 C. C. A. 373, and in Steel & Masonry Company v. Reilly, 210 Fed. 437, 127 C. C. A. 169, holding that if the scaffold furnished to the servant is unsafe the master is liable for the result. In so holding we followed the New York Court of Appeals. Stewart v. Ferguson, 164 N. Y. 553, 58 N. E. 662. We see no reason to modify our former opinions, and are referred to no decisions of the Court of Appeals which are persuasive to such modification. See Caddy v. Interborough, 195 N. Y. 415, 88 N. E. 747, 30 L. R. A. (N. S.) 30, and Gombert v. McKay, 201 N. Y. 27, 94 N. E. 186, 42 L. R. A. (N. S.) 1234.

[2] There was no error in the refusal to charge that the plaintiff was not engaged in painting when he fell, and therefore not within the statute. As the washing off of the kalsomine was an essential preliminary to making a good job of his painting, it was as much a part of the painting as would be the adding of ingredients to the paint pot.

[3] So, too, plaintiff was engaged in painting "a house, building, or structure." He was painting part of a house, a room in the house; we can see no reason why the statute should be confined to the *whole* house, or to the outside of the house. The court instructed the jury that the burden was on the plaintiff to prove by a preponderance of the evidence that the plank was unsafe.

[4] Error is assigned to the refusal to charge the following requests:

"(5) That it was plaintiff's duty to use reasonable care to examine the planks, to see to it that those put upon the horses by himself and Hughes were not defective."

"(8) If plaintiff was careless in the slightest degree, which contributed to the accident, he cannot recover.

"(9) If plaintiff did not use reasonable care to see to it that no defective plank was put on the horses, or in going upon the defective plank, such lack of care is contributory negligence."

The court had already charged the jury that, under the statute, the defense of contributory negligence was still available for the defendant; that—

"plaintiff cannot go about with his eyes shut. He must use, under all circumstances, ordinary care for his own safety.. * * * If you find from the evidence that the plaintiff knew, or in the exercise of ordinary care should have known, or have reason to believe or suspect, that this plank was not safe, then he was not justified in using it. He would be guilty of contributory negligence in so doing."

After calling attention to a conflict of testimony as to whether there were any other planks available, the court said:

"Then it goes back to this question of care on the part of the plaintiff that I have already referred to, whether he knew that any of the planks that he did use were defective or unsafe, or could, in the exercise of ordinary care for his own safety, have discovered that they were unsafe."

We think the jury were fully instructed on this branch of the case, and that there was no error in refusing to charge as requested.

We find no other assignment of error which calls for discussion. There was a conflict of medical testimony as to the extent and character of his injuries.

Judgment affirmed.